UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INNERWORKINGS, INC.,

*Plaintiff*,

v.

SARA HORN and SMART SOURCE,
LLC,

*Defendants.*

Case No. 8:21-cv-00903

## DEFENDANT SMART SOURCE LLC'S MOTION TO DISMISS

COMES NOW, Defendant, Smart Source, LLC ("Smart Source"), by and through undersigned counsel, and pursuant to Rules 12(b)(6) and 8 of the Federal Rules of Civil Procedure, as well as other applicable law, and respectfully moves to dismiss Counts I-X of Plaintiff's, InnerWorkings, Inc. ("InnerWorkings" or "Plaintiff"), complaint (the "Complaint") for failure to state a claim, and in support thereof, states as follows:

## INTRODUCTION

InnerWorkings' Complaint fails to provide sufficient factual basis to support the claims alleged therein. Defendant Smart Source is a similar business to that of Plaintiff who hired the codefendant Sara Horn after she left InnerWorkings employ. InnerWorkings' complaint brings claims against both defendants for misappropriation of trade secrets under federal and state law (Counts I and II), and for aiding and abetting breach of fiduciary duty. Plaintiff alleges codefendant Sarah Horn misappropriated information (identified by Plaintiff to be 'trade secrets" as defined by 18 U.S.C. §1836 *et seq.* and HRS §482B-1 *et seq.*) pertaining to pricing inventories, sales strategies, and other sales-related business information. Plaintiff

1

alleges "*upon information and belief*" Smart Source is currently using or will use InnerWorkings' trade secrets to conduct business. (Dkt. No. 1, ¶90). Plaintiff alleges "there is a substantial likelihood that Horn has disclosed or used, and will continue to use, InnerWorkings' trade secrets" and alleges this information was misappropriated at Smart Source's direction. (Dkt. No. 1, ¶¶ 94 and 95).

Plaintiff brings a claim for aiding and abetting breach of the fiduciary duty of loyalty against Smart Source and Sarah Horn (Count VII). Plaintiff alleges that Smart Source knowingly participated in non-party Ray Evans's breach of a duty of loyalty alleged by Plaintiff. Dkt. No. 1, ¶¶ 138 and 141). Plaintiff alleges that non-party Ray Evans solicited InnerWorkings clients to do business with Smart Source, however Plaintiff does not allege any specific act, conduct, or otherwise any factual allegation pertaining to Smart Source to support this claim. (Dkt. No. 1, ¶140).

Plaintiff also brings claims for tortious interference with a contract and business relationships against Smart Source (Counts VIII and IX). Plaintiff alleges that Smart Source "planned and participated in the aiding and abetting breaches" by numerous non-parties including Ray Evans and InnerWorkings sales employees not party to this suit. (Dkt. No. 1, ¶¶ 149). Plaintiff again fails to provide factual allegations to show any action on the part of Smart Source to solicit the non-parties' breach, but simply casts a broad net to say, in a conclusory manner, this breach enabled Smart Source to "immediately acquire a substantial business in Hawaii without paying fair market value for it." (Dkt. No. 1, ¶151). Plaintiff further claims Smart Source "improperly and without privilege interfered in InnerWorkings' contracts with Horn by inducing, enticing and directing her to breach her contractual obligations to InnerWorkings…" (Dkt. No. 1, ¶158).  Without alleging actual conduct or

providing factual allegations, Plaintiff asserts this was "willful and intentional." (Dkt. No. 1, ¶160).

Plaintiff also brings a separate Unfair Method of Competition claim under Hawaiian law (Count IX). Plaintiff claims Smart Source "violated Hawaii Revised Statutes § 480-2(a) because its conduct was an unfair method of competition…" (Dkt. No. 1, ¶164). Plaintiff claims Smart Source engaged in "wrongful and unfair conduct" to obtain "an unfair and illegal business advantage." (Dkt. No. 1, ¶¶ 167, 168 and 170).

All InnerWorkings' claims are defective and should be dismissed under Rules 12(b)(2) and 12(b)(6).

Plaintiff InnerWorkings' Complaint lacks the specifics of factual allegations to support its claims and instead relies on vague and conclusory statements of law. InnerWorkings contradictory statements grossly overstate and generalize Smart Source's involvement in codefendant Horn's and other third parties' actions relating to the termination of their positions at InnerWorkings.

InnerWorkings only provides improper conclusory statements asserting Smart Source was somehow urging Defendant Horn to misappropriate trade secrets, while failing to provide the needed factual allegations of the use or theft of trade secrets and only relying on the inference or assumptions that Ms. Horn's knowledge of InnerWorkings' business is the source of their damages. For just one example, InnerWorkings alleges that Smart Source "would be able to" use misappropriated trade secrets, rather than alleging actual instances of misappropriation. (Dkt. No. 1, ¶¶ 32, 50, and 89). InnerWorkings points to the conduct of Ray Evans ("Evans"), a former InnerWorkings employee, to allege claims against Smart

Source, and therefore has no factual basis to support misappropriation claims against Smart Source.

InnerWorkings' claims for tortious interference with business relationships or with contracts also fail to include the factual basis required by law to support these claims needed to survive a motion to dismiss. InnerWorkings fails to provide anything more than vague conjecture that Smart Source encouraged, induced, or solicited InnerWorkings sales representatives or customers.

Plaintiff's claims admit they rely on speculation and are supported by allegations formed "*upon information and belief."* (Dkt. No. 1, ¶¶ 7, 10, 14, 27, 48, 54, 58, 59, 64, 67, 77, 78, 82, 84, 90, 149, 159 and 169). Plaintiff does not provide enough factual matter to suggest these claims are valid in accordance with the Rule 8 *Iqbal/Twombly* pleading standards. Counts I – X, as far as they pertain to Defendant Smart Source, and therefore should be dismissed in their entirety.

## STATEMENT OF FACTS

Smart Source hired codefendant Sara Horn, a former employee of InnerWorkings, for an operations position, not a sales position which she formerly held at InnerWorkings. (Dkt. No. 1, ¶ 3) Plaintiff's complaint infers some form of unfair practice by alleging an InnerWorkings client emailed Horn at Smart Source for a project the client had retained Smart Source for. (Dkt. No. 1, ¶5). The Complaint alleges no act by Smart Source to coerce or encourage this client to email Horn at her Smart Source address. Rather, Plaintiff speculates *"upon information and belief"* that Smart Source solicited this client to leave InnerWorkings without providing any proof of such. Dkt. No. 1, ¶7).

Plaintiff alleges within a few months of codefendant Horn's visit to Hawaii in December 2019, Smart Source went from having "little to no presence in Hawaii" to alleging all InnerWorkings clients and sales representative employees moving from InnerWorkings to Smart Source. Dkt. No. 1, ¶8). Once again, Plaintiff does not allege any actions by Smart Source, but infers or speculates *"upon information and belief"* that Smart Source planned to take all of InnerWorkings Hawaiian business. Dkt. No. 1, ¶10). The Complaint is entirely devoid of any allegations that Smart Source did anything including but not limited to directed third-party InnerWorkings sales representative employee Ray Evans to email to himself customer financial information.

Plaintiff also fails to provide any factual allegations that Smart Source or Sarah Horn solicited any InnerWorkings employee to leave or resign their positions and move to Smart Source. The Complaint again speculates Smart Source hired Sarah Horn for her *ability* to take business from InnerWorkings but fails to provide with any specificity allegations that Smart Source solicited information from Sarah Horn or Ray Evans. Any actionable conduct alleged in Plaintiff's Complaint pertain to Ray Evans and other former InnerWorkings employees who are not a party to this suit.

## ARGUMENT

1. **Legal Standard**

For a plaintiff's complaint to survive a motion to dismiss under Rule 12(b)(6), that complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, that complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's allegations must "allow the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims within that complaint must rely on factual allegations relevant to the elements and requirements of each claim therein. "[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co. Inc.,* 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. 678). "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S 678.  On this basis, as well as others set forth below, InnerWorkings has failed to plead with even a hint of particularity any colorable claims against Smart Source.

**2.    Counts I And II Fail to Allege Smart Source Misappropriated Any Trade Secrets.**

Counts I and II of Innerworkings' Complaint consist of federal and state law claims for Smart Source's alleged use of misappropriated trade secrets. Innerworkings' Complaint utterly fails to allege that Co-Defendant Ms. Horn took any trade secrets from her former employer InnerWorkings or brought them to Smart Source. InnerWorkings instead simply and improperly implies that, due to Defendant Sara Horn's *access* to "trade secrets" before she was hired by Smart Source, that she is allegedly misappropriating those secrets. InnerWorkings' assumptions are not sufficient to survive a motion to dismiss.  *Teradyne, Inc. v. Clear Communications Corp.*, 707 F. Supp. 353 (N.D. Ill. 1989). Access to such information is not "allegata" with sufficient precision to survive at this stage.

In *Teradyne, Inc v. Clear Communications Corp.,* a marketing employee, and a software engineer at a telecommunications company both left to work for another company after over a decade with their previous employer. The former employer alleged the defendants were "in a position to misappropriate trade secrets because they [knew] them and are in the same

business" and that this constituted "a high degree of probability of inevitable and immediate" misappropriation of trade secrets. *Id.* at 356.

The Plaintiff in *Teradyne*, however, did not include any allegations that the defendants did *in fact* threaten to misappropriate trade secrets. *Teradyne*, 707 F. Supp. at 356. Merely being able to misappropriate trade secrets is not enough to support a claim, as the court held the defendants' actions "working for [the plaintiff], knowing its business, leaving its business, hiring employees from [plaintiff] and entering the same field (though in a market not yet serviced by [plaintiff]) do not state a claim of threatened misappropriation." *Id.*

Like the defendants in *Teradyne*, InnerWorkings only alleges Co-defendant Sara Horn, as an employee currently of Smart Source, merely had knowledge and *access* to InnerWorkings alleged trade secrets and information upon leaving InnerWorkings to work for Smart Source. InnerWorkings fails to claim with specificity any actual or even circumstantial incidents of misappropriation of trade secrets through Smart Source, LLC's, or Sara Horn's alleged concerted actions. InnerWorkings fails to claim that Smart Source used any actual physical information or data to misappropriate anything.

Like Teradyne, such is the same scenario presented here. All InnerWorkings has alleged is that Ms. Horn had "access" to trade secrets while employed at InnerWorkings and then left Plaintiff and then went to work for a competitor. The Complaint does not even provide one specific allegation regarding Ms. Horn's general duties at InnerWorkings or the ways in which those duties overlap or even MIGHT overlap with her current position at Smart Source such that even a circumstantial case might obtain in allegation form. It also does not allege that Ms. Horn took any files, received any files, or committed any other improper act. Ms. Horn's mere *knowledge* of her work experience at InnerWorkings is simply not legally

a sufficient factual predicate to support a claim for misappropriation.  InnerWorkings has not properly alleged in its complaint that Smart Source will harm it.

Counts I and II fail to sufficiently allege the existence of any trade secrets and that Smart Source misappropriated any trade secrets, and both should be dismissed.

**3.** **Count VII for Aiding and Abetting Breach of Fiduciary Duty Must Be Dismissed.**

InnerWorkings' claim for aiding and abetting a breach of fiduciary duty against Smart Source must be dismissed. A claim for aiding and abetting a breach of fiduciary duty must allege that: (1) the party whom the defendant aids performed a wrongful act which causes an injury; (2) the defendant was regularly aware of its role as part of the overall or tortious activity at the time that it provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. *Premier Cap. Mgmt., LLC v. Cohen*, No. 02 C 5368, 2008 WL 4378313, at *2 (N.D. Ill. Mar. 24, 2008). InnerWorkings' aiding and abetting claim against Smart Source is based on Smart Source's alleged participation in co-defendant Sara Horn's solicitation of an InnerWorkings customer on February 13, 2020, and alleged damages arising from that solicitation, they only claim , without more, that Smart Source "encouraged and substantially assisted" the alleged violations. (Dkt. No. 1, ¶ 78).

The second element to a claim of aiding and abetting requires that Smart Source be aware of its potential influence or action regarding Evans' alleged solicitation of InnerWorkings' clients and the third element requires the defendant, Smart Source, knowingly and substantially assisting the principal violation. *Id.* InnerWorkings fails to allege with specificity any allegations that Smart Source substantially assisted, had prior knowledge of or encouraged Evans to send the February 13, 2020, email. *See PLB Invs. LLC v. Heartland Bank & Tr. Co.,* No. 20 C 1023, 2021 WL 492901, at *9 (N.D. Ill. Feb. 9, 2021) ("[A]llegations

of bad faith or what the [party] should have known do not suffice for purposes of an aiding and abetting claim") (citing *Zachman v. Citibank, N.A.*, 183 F. Supp. 3d 922, 924 (N.D. Ill. 2016) (failure to allege bank's actual knowledge of scheme was fatal to aiding and abetting claim); *In re Canopy Fin., Inc.*, No. 12-cv-04646, 2015 WL 3505010, at *7 (N.D. Ill. June 2, 2015) ("[A]nalysis of claims of aiding and abetting fraud and breach of fiduciary duty has consistently distinguished actual knowledge and participation from the 'should have known' state of mind, and has just as consistently held that the latter mindset is not actionable")). Because InnerWorkings fails to allege what Smart Source allegedly did to aid and abet breach of fiduciary duty, nor does InnerWorkings allege Smart Source had substantial knowledge or assisted in Evans' breach of fiduciary duty.

**4.     Count VIII Fails to Allege Conduct Attributable to Smart Source, LLC to Support Tortious Interference Claims.**

InnerWorkings' tortious interference claims (Counts VIII and IX) should also be dismissed, for they lack the allegations and terms required to uphold these claims according to law. Smart Source also herein incorporates its argument in Section 3 *supra* in support of dismissing InnerWorkings' claims for tortious interference, as for the same reasons the aiding and abetting claims fail, so do InnerWorkings' tortious interference claims fail.

A tortious interference with business relationships claim must allege: (1) the existence of a valid business relationship or expectancy; (2) the defendants' knowledge of plaintiff's relationship or expectancy; (3) an intentional and unjustified interference by the defendant inducing or causing a breach or termination of the expectancy; (4) damages to plaintiff resulting from such interference. *James v. Intercontinental Hotels Grp. Res., Inc.,* No. 09-CV-781, 2010 WL 529444, at *3 (N.D. Ill. Feb. 10, 2010).

Again, InnerWorkings alleges only vaguely some assertions that Smart Source participated in tortious interference by citing Smart Source had *knowledge* of InnerWorkings' business relationships and assuming Smart Source induced or directed others to breach those obligations. (Dkt. No. 1, ¶¶ 146 and 148). However, InnerWorkings fails to specifically allege what actions show intentionality or unjustified interference. Without even the barest factual allegations to support InnerWorkings claims, they must be dismissed.

**5.** **Count X Must Be Dismissed**

InnerWorkings' Unfair Method of Competition claim, which relies on Hawaiian statute HRS § 480-2, similar to its other claims, are mortally wounded because they are vague and lack factual allegations to concretely allege Smart Source's actions constituted an unfair practice. Hawaiian law provides, to prevail in an action for violation of the unfair or deceptive acts or practices statute, a plaintiff must demonstrate that the complained of actions amounted to an unfair method of competition or an unfair or deceptive act or practice that caused the plaintiff's injury. *Goran Pleho, LLC v. Lacy*, 2019, 439 P.3d 176, 144 Hawai'i 224. Under the State of Hawaii's unfair and deceptive acts or practices (UDAP) statute, a deceptive act or practice is: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material. *Ryan v. Salisbury*, 2019, 380 F.Supp.3d 1031.

InnerWorkings alleges its damages and, in a conclusory way, that Smart Source's conduct was unfair. (Dkt. No. 1, ¶¶ 168 and 171). InnerWorkings fails to provide allegation of potential proof of any omission or representation meant to mislead, and factual allegations of fraud, or otherwise the existence of any affirmative proof of actions that would support this claim. Instead, InnerWorkings seeks to rely on its continued conclusory statements and affirm

only its speculative damages to prove, and in this case, fail in doing so, that some vague action may have occurred to constitute an unfair practice. InnerWorkings relies on the implications that Smart Source "acquire a complete, fully functioning, going-concern, multi-million dollar business" at no cost without providing any specific factual allegations to support a claim under HRS § 480-2. (Dkt. No. 1, ¶ 169). InnerWorkings merely recites the elements of the Hawaiian unfair competition statute. For this reason, Count X must be dismissed.

Dated:  July 9, 2021

Respectfully submitted,

/s/ Dale R. Sisco
Dale R. Sisco
dsisco@sisco-law.com
Florida Bar No. 559679
Dominic A. Isgro
disgro@sisco-law.com
Florida Bar No. 113318
SISCO-LAW
1110 N. Florida Avenue
Tampa, FL  33602
(813) 224-0555 – Telephone
(813) 221-9736 – Facsimile

-and-

Louis Levenson
Levenson & Associates
GA Bar No. 447938
(Pro Hac Vice Pending)
125 Broad Street SW
Atlanta, GA 30303
louis@levensonlaw.com
Attorneys for Defendant Smart Source, LLC

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 9, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt.

*/s/ Dale R. Sisco*
Attorney