UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INNERWORKINGS, INC.,

    Plaintiff,

v.                              CASE NO. 8:21-CV-00903-SDM-AEP

SARA HORN AND SMART
SOURCE, LLC,

    Defendants.
_____/

**DEFENDANTS' REPLY IN SUPPORT OF
JOINT MOTION FOR SUMMARY JUDGMENT**

Defendants Sara Horn and Smart Source submit this reply in support of their Motion [DE 192] and in response to IW's Opposition to the Motion [DE 201].

**I.    Defendants did not waive any defenses**

IW argues that Defendants waived the arguments that: (1) IW cannot authenticate the 2018 Stock Agreements; and (2) IW cannot prove its damages. DE 201 at 7-9. This argument fails for several reasons, as set forth below.

IW claims that Defendants' alleged failure to identify these defenses is a "classic 'ambush by surprise.'" DE 201 at 8. These defenses were no surprise.[1] Indeed, IW requested extra pages for its summary judgment motion "[b]ecause Ms. Horn has disputed knowingly and voluntarily entering into these agreements" so IW was

---

[1] Horn has never agreed that the 2018 Stock Agreements are the actual agreements she accepted in 2018. DE 199-1 at 186:20-23, 187:19-22; *see* DE 191-14 at Exs. M and N; *see also* 199-2 at 13 – 18.

1

required to brief "the electronic execution process to show offer and acceptance." DE 172 at 1-2. IW's argument proves IW was aware of the authentication issues.

IW incorrectly asserts that Defendants argue that IW used the wrong measure of damages. Defendants' argument is that IW "***has no evidence*** to prove the damages applicable to each of the claims asserted" because it cannot prove it was completely destroyed. DE 192 at 18 (emphasis added). Defendants did not waive any argument that IW cannot prove its claims. Indeed, Smart Source denied in its answer that it caused the complete destruction of IW's Hawaii Operations. DE 88 ¶¶ 203, 209.

Further, Defendants are not restricted to the defenses discussed in response to IW's contention interrogatories. *See*, *e.g.*, *Abbott Point of Care, Inc. v. Epocal, Inc.*, 2012 WL 12897957, at *1 (N.D. Ala. Feb. 9, 2012) (deciding summary judgment, "[t]he court finds no merit in Abbott's assertion that Epocal should not be allowed to present any evidence other than its responses to Abbott's contention interrogatories"). Moreover, Defendants objected to IW's contention interrogatories on the basis that they violated the Middle District Civil Discovery Handbook. *See Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, 2014 WL 186123, at *4 (M.D. Fla. Jan. 16, 2014) (noting that a similar contention interrogatory was "precisely the sort of contention interrogatory discouraged by the Middle District Discovery handbook"). IW never moved to compel better responses. *See POWERbahn, LLC v. Found. Fitness LLC*, 2021 WL 2689852, at *4 (N.D. Ga. Mar. 26, 2021) ("Wahoo never moved to compel POWERbahn to provide more detailed or comprehensive contention interrogatory responses. Instead, Wahoo rolled the dice on moving forward with filing its summary

judgment motion . . . . Wahoo's lack of effort to remediate supports the Court's conclusion that it was not harmed."). Lastly, Defendants' arguments are pure law and not responsive to a contention interrogatory. *See Miller v. Garibaldi's, Inc.*, 2016 WL 7257035, at *7 (S.D. Ga. Dec. 15, 2016) ("Contention interrogatories may not, however, reach questions of 'pure law.' *See* Fed. R. Civ. P. 33, advisory committee's note to 1970 amendment [even 'under the new language interrogatories may not extend to issues of "pure law," *i.e.*, legal issues unrelated to the facts of the case'].").

## II.  IW cannot prove damages based on the undisputed facts

IW did not present any evidence to dispute Defendants' evidence that as of February 14, 2020: (1) Clayton Ichikawa, IW's top sales person, was still employed by IW; (2) customers were still placing new orders; and (3) IW continued to generate new revenue thereafter until it was sold. DE 192 at 22-24. In fact, IW sought leave to file a spreadsheet in connection with its summary judgment motion, under seal, regarding IW's "Hawaii business from 2015 *through 2021* (including but not limited to the content of the order, the price paid, the gross margin on each such order)." DE 188 at 3-4. IW's own evidence confirms that it was still generating *new* sales in 2021. There is no dispute that IW was not "completely destroyed" on February 14, 2020.

IW argues summary judgment is improper because whether a business is completely destroyed is a factual question. DE 201 at 14 (citing *In re Sherwood Invs. Overseas Ltd, Inc. ABN AMRO Bank N.V.*, 2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015)). But the very case they cite held otherwise; the *Sherwood* court found, on summary judgment, that "the record evidence is both robust and convincing" and that

3

Sherwood had been completely destroyed. *Id*. at *24. Similarly, this Court can decide, based on the undisputed evidence, that IW was not completely destroyed.[2]

IW also erroneously claims that the "*Sherwood* court held that a business may be 'completely destroyed' as of a particular date even where it 'continue[s] to receive de minimis revenue from supporting old contracts.'" DE 201 at 15. The quoted language is dicta; the *Sherwood* court was merely explaining the holding of *Montage Group, LTD. v. Athle-Tech Comp. Sys., Inc.*, 889 So. 2d 180 (Fla. 2d DCA 2004). *See In re Sherwood*, 2015 WL 4486470, at *24. In *Montage*, the court held that a business had been completely destroyed because plaintiff was deprived of digital technology needed to make new sales and "made its last sale of an analog system in 1997." *Montage*, 889 So. 2d at 192-93. Plaintiff generated revenue after 1997 from sales that were made in 1997 while plaintiff had access to the digital technology, for a limited period, and from servicing systems the systems it previously sold. *Montage*, 889 So. 2d at 192-93. The evidence was undisputed that the plaintiff could not sell any *new* systems after 1997, so the business was deemed to have been totally destroyed. *Id*. at 193.

IW's claim that those facts are "precisely the scenario we have here" is patently false. DE 201 at 15. The evidence is undisputed that IW could, and did, make new sales after February 14, 2020. IW's revenue was not solely attributable to "old" sales.[3]

---

[2] Sherwood was a company that would speculate on stocks through derivate instruments created by RBS. *In re Sherwood*, 2015 WL 4486470, at *2. The court determined that "Sherwood was completely destroyed by October 2008, when RBS ended" the relationship and "Sherwood never made another trade or purchase." *Id.* at *24. Here, IW can and did make new sales after February 2020.

[3] IW attempts to argue that the amount of the revenue that the *Montage* plaintiff generated after 1997 was comparable to the amount of revenue that IW generated from 2020 through 2022. DE 201 at 15

4

As a last ditch effort, IW argues that granting this Motion would provide Defendants a windfall. DE 201 at 19. IW chose this damage model to obtain the full market value of its business, despite the undisputed fact that IW continued to operate that business to generate new revenue – classic double dipping. It is IW, not Defendants, that is seeking a windfall. Regardless, it is not the Court's role to save IW from its failure to prove its chosen damage model. Summary judgment is proper.[4]

### III.  IW cannot seek any other damages

IW argues that it is entitled to other damages if the Court concludes that it was not totally destroyed on February 14, 2020. DE 201 at 19-23. IW cannot seek alternative damage theories because it previously committed to a complete destruction damages model while expressly disclaiming other damages. *See A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1342-43 (S.D. Fla. Mar. 26, 2021) (granting summary judgment and preventing plaintiff from asserting alternate damage models where it had previously limited its damages during discovery); *Environmental Biotech,*

---

n.132. The amount of the revenue in *Montage* was not relevant; the issue was that *all* of that later revenue related to prior sales. IW made new sales, but argues that "[m]uch of the revenue" booked in 2020 was from sales prior to February 14, 2020. DE 201 at 15 n.13. "Much" is not "all", so again, it is undisputed that IW was generating new sales after February 2020, and *Montage* is inapposite.

[4] IW argues that its Hawaii operations constitute a separate business. Notably, in its initial disclosures, IW stated that one area of knowledge for certain witnesses is "InnerWorkings's efforts to sell its middle market business and/or ***the Hawaii segment of that business***." DE 192-36 (emphasis added). Thus, it is indisputable that Hawaii was at most a segment but not a separate business. Regardless, IW was unable to cite any case, from anywhere, that applied the total destruction damage model to a global company's loss of operations in one state. There is no reason that this Court should be the first to do so, especially since, even if IW had a separate Hawaii business, it was not "completely destroyed."

5

*Inc. v. Sibbit Enterp., Inc.*, 2008 WL 5070251 at *4 (M.D. Fla. Nov. 24, 2008) (rejecting Plaintiff's "attempt to recapture [its] specifically abandoned claims, i.e. lost profits.").

IW's Second Amended Initial Disclosures expressly state that IW "will be seeking as damages the value of its business in Hawaii as of February 14, 2020, the date that Defendants destroyed that business through their illegal conduct." DE 192-36.[5] While IW further stated that it would be seeking to recover "exemplary and/or punitive damages in its statutory and common law claims," IW stated those would be two to three times "actual damages." Therefore, any alleged damages must be computed from IW's "total destruction theory"—a theory IW cannot prove. IW did not list nominal damages, so those damages are not recoverable. *See A&E Adventures*, 529 F. Supp. 3d at 1343 (noting that when a category of damages is not listed in a party's initial disclosures, that is reason enough to discard it).[6]

IW expressly disclaimed other damages models while reaffirming it was seeking damages under a total destruction theory. *See* DE 145 at 10 n.5 ("InnerWorkings is not seeking lost profit damages . . . . It is seeking the value of the Hawaii business on the date it was destroyed Defendants."). As in *A&E Adventures* and *Environmental Biotech*, IW cannot change its damage theory to survive summary judgment.

---

[5] IW identified the same model of damages for each of its claims in its Amended Responses and Objections to Defendant Smart Source's First Set of Interrogatories. DE 192-35.

[6] Even if listed, nominal damages would not be recoverable in the tort actions asserted by IW. *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1355–56 (S.D. Fla. 1999) (explaining that an "integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff as a result of the breach of the relationship," and "[p]roof of nominal damages will not suffice"). Moreover, punitive damages are not available for a mere breach of contract. *Abad v. Lacalamita*, 353 So. 3d 1217, 1219 (Fla. 3d DCA 2022).

### IV. IW cannot prove any contract with Horn

IW confirms Biana Markovsky's (UBS's designated representative) testimony and admits that UBS0000185-89 is *representative* of "the agreement that Horn viewed and accepted on September 26, 2018 when she accepted her 2018 equity grant" and that such "is all that is required for UBS to authenticate the Equity Grant Agreements." DE 201 at 30-31; *See* DE 199-3 at 157:18-162:16. **IW ignores that UBS0000185-189 is not the same as Exhibits A and B to the Amended Complaint because UBS0000185-189 do not contain any restrictive covenants.**[7] Summary judgment must be granted.

Despite clear inability to resolve the conflict, IW attempts to rely upon Ronald Provenzano, Emily Pfabe and Janell Oudenhoven[8] to authenticate the 2018 Stock Agreements—they cannot. Reliance upon Pfabe and Oudenhoven is IW's own attempt to "ambush by surprise." Moreover, Provenzano[9], Oudenhoven[10] and Pfabe

---

[7] While IW critiques Defendants' questioning of Oudenhoven (DE 201 at 27-28), IW's own counsel failed to ask necessary authentication questions of Markovsky and further failed to recognize that UBS0000185-89 is not the same as the documents IW asserts to be the 2018 Stock Agreements.

[8] Both Oudenhoven and Pfabe's declarations should be disregarded entirely because: (1) Oudenhoven was never disclosed in IW's Rule 26 Initial Disclosures, as amended, and Defendants had no knowledge or reason to believe Oudenhoven would be proffered to authenticate the operative contracts central to this action; and (2) Pfabe was identified solely as to "Horn's resignation from InnerWorkings; and the resignations of the Hawaii sales employees … ."

[9] Provenzano was the sole IW 30(b)(6) representative on topics relating to the execution and administration of IW's equity award program. When asked if any documents exist that reflect Horn's acceptance, Provenzano testified it would be in the UBS system. DE 201-11 at 179:23 – 180:12 ("It would have to be in the UBS system . . . one could be printed from the UBS system; but I don't think I've personally seen it.")

[10] Oudenhoven confirmed IW did not regularly download, save or maintain copies of equity grant agreements (Oudenhoven Depo. 115:24–117:13) but conveniently in her declaration now claims she "regularly retrieved copies of the equity grant agreements . . . ." DE 201-4 at ¶ 4.

all confirm UBS was IW's records custodian responsible for maintaining IW's accepted equity grant agreements. DE 201-11 at 145:7-9; 179:23-25; 180:1-6; DE 196-26 at 115:24–117:13; DE 201-4 at ¶ 4; DE 201-1 at ¶ 5. Provenzano admits he did not draft the agreements but merely blessed the final version. DE 201-11 at 164:6-10 ("In drafting, . . . I was reviewing something that would have been updated by external counsel and, you know, blessing kind of a final version."). Pfabe and Oudenhoven merely assert that they downloaded documents and passed them along. *See* DE 201-1; DE 201-4. Provenzano, Pfabe and Oudenhoven lack the requisite personal knowledge of the **contents** of the agreements such that they could testify as to their authenticity.

Moreover, IW must prove a secure method used to archive and retrieve electronic documents to ensure no alteration after signature. *In re Vee Vinhnee*, 336 B.R. 437 (B.A.P. 9th Cir. 2005).[11] UBS is the only witness capable of authentication—confirming UBS0000185-89 is the agreement Horn accepted in 2018. None of the IW witnesses testify how IW secured, archived and retrieved the alleged 2018 Stock Agreements.[12] Given the conflict identified, IW cannot authenticate the alleged agreements.

## V.   IW's claims also fail on several elements

---

[11] IW cites *Handley v. United States*, 2020 WL 4692388 (N.D. Ala. Mar. 20, 2020) and *Goguen ex rel. Est. of Goguen v. Tectron, Inc.*, 234 F.R.D. 13 (D. Mass. 2006) but neither *Handley* nor *Goguen* address authentication of electronic documents—both involved wet-ink signatures.

[12] Moreover, Pfabe cannot confirm whether Ms. Glashagel, Mr. Azar or Mr. Wagner maintained appropriate chain of custody to ensure the integrity of the documents asserted to be the 2018 Stock Agreements which she received from Oudenhoven.

### A.   Tortious interference with customers & breach of duty of loyalty

IW argues that Defendants are liable for tortious interference because there is evidence that Evans "solicited all" of his customers. DE 201 at 41. Proving solicitation is insufficient to sustain a claim. DE 192 at 42 (citing *Westgate Resorts, Ltd. v. Sussman*, 2019 WL 3848805 (M.D. Fla. July 26, 2019)). Not surprisingly, IW had no response to the *Sussman* opinion. Summary judgment is proper.

IW's aiding and abetting claim fails for this same reason. IW has no evidence that any customer ceased doing business as a result of Evans' conduct.

### B.   Tortious interference with Horn's contract

IW did not dispute, as set forth in the Motion, that there is no evidence that Smart Source knew the *terms* of any alleged contract with Horn. DE 192 at 43. Mere knowledge of a contract is not sufficient to establish tortious interference. *Id*.

### C.   Breach of Contract

If the Court finds there to be an enforceable agreement, and further that Horn breached such agreement, IW still cannot prove Horn's alleged conduct actually caused a single customer to cease working with IW—IW has no evidence. As confirmed in *Sussman*, it is improper to assume alleged improper conduct was the proximate cause of a third party's decision without testimony from the third party. Likewise, not a single sales representative has stated that they left IW because of Horn.

### D.   Unfair competition

Assuming Hawaii law applies, IW alleged one (1) injury—complete destruction—despite IW's continued operations in Hawaii and globally. IW cannot

9

prove an injury in fact. Moreover, IW's argument is that Defendants' alleged conduct negatively affected IW—devoid of any allegation of a negative effect on competition or harm to fair competition as required by law. *See Field, Tr. Of Est. of Aloha Sports Inc. v. Nat'l Collegiate Athletic Ass'n*, 431 P.3d 735, 745 (Haw. 2018).  IW's claim that Defendants engaged in unfair method of competition fails as a matter of law.

### E. Conspiracy

IW does not have any evidence that Defendants engaged in improper behavior prior to Horn's employment, so the conspiracy claim is barred.  DE 192 at 49.

WHEREFORE, Defendants request that the Court grant the Motion.

| /s/ Jennifer W. Corinis | /s/ Eric Christu |
|---|---|
| Jennifer W. Corinis | Louis Levenson |
| Florida Bar No. 49095 | (Admitted Pro Hac Vice) |
| **GREENBERG TRAURIG** | **LEVENSON & ASSOCIATES** |
| 101 E. Kennedy Blvd., Suite 1900 | 125 Broad Street SW |
| Tampa, FL  33602 | Atlanta, GA 30303 |
| corinisj@gtlaw.com | louis@levensonlaw.com |
| | |
| Daniel Hildebrand, Esquire | Eric C. Christu, Esq. |
| (Admitted Pro Hac Vice) | Florida Bar No. 434647 |
| LEWITAS HYMAN PC | SHUTTS & BOWEN LLP |
| 161 N. Clark Street, Suite 1600 | 525 Okeechobee Blvd., Suite 1100 |
| Chicago, IL  60601 | West Palm Beach, FL 33401 |
| dhildebrand@securitieslaw.com | echristu@shutts.com |
| | |
| Attorneys for Defendant Sara Horn | Attorneys for Defendant Smart Source, LLC |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 16, 2023, a true and correct copy of the foregoing was served electronically on all counsel of record.

/s/ Eric C. Christu
Eric C. Christu, Esq.