UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | | |
|---|---|---|
| INNERWORKINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 8:21-CV-00903-SDM- |
| v. | ) | AEP |
| | ) | |
| SARA HORN and SMART SOURCE, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Defendants Sara Horn and Smart Source, LLC, pursuant to the Court's October

12, 2022 Order (ECF 138), submit the following proposed pre-trial, in-trial and post-

trial jury instructions.

## [SPACE INTENTIONALLY LEFT BLANK]

i

# TABLE OF CONTENTS

PRELIMINARY INSTRUCTIONS    1

1.1 GENERAL PRELIMINARY INSTRUCTION ................................................................. 1

1.2 BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE ......................................... 11

1.4 JURY QUESTIONS ................................................................................................. 12

1.5 INTERIM STATEMENTS .......................................................................................... 14

TRIAL INSTRUCTIONS        15

2.2 USE OF DEPOSITIONS .......................................................................................... 15

2.5 JUDICIAL NOTICE ................................................................................................ 16

2.1 STIPULATIONS ..................................................................................................... 17

BASIC INSTRUCTIONS        18

3.2.2 THE DUTY TO FOLLOW INSTRUCTIONS – CORPORATE PARTY INVOLVED ............. 18

3.3 CONSIDERATION OF DIRECT AND CIRCUMSTANTIAL EVIDENCE; ARGUMENT OF
COUNSEL; COMMENTS BY THE COURT ........................................................................ 19

3.4 CREDIBILITY OF WITNESSES ................................................................................ 20

3.5.1 IMPEACHMENT OF WITNESSES BECAUSE OF INCONSISTENT STATEMENTS .......... 21

3.6.1 EXPERT WITNESS .............................................................................................. 22

3.7.1 RESPONSIBILITY FOR PROOF – PLAINTIFF'S CLAIMS – PREPONDERANCE OF THE
EVIDENCE ................................................................................................................. 23

3.7.2 RESPONSIBILITY FOR PROOF – AFFIRMATIVE DEFENSE PREPONDERANCE OF THE
EVIDENCE ................................................................................................................. 25

3.8.1 DUTY TO DELIBERATE WHEN ONLY THE PLAINTIFF CLAIMS DAMAGES ............... 27

TRADE SECRETS INSTRUCTIONS 28

ii

11.1 TRADE SECRETS - MISAPPROPRIATION OF A TRADE SECRET.......................................28

11.4 TRADE SECRETS – DAMAGES – COMPENSATORY ...............................................................33

11.5 TRADE SECRETS – DAMAGES – EXEMPLARY.........................................................................34

BREACH OF CONTRACT INSTRUCTIONS        35

416.1 BREACH OF CONTRACT ─ INTRODUCTION.........................................................................35

CONTRACT FORMATION ─ ESSENTIAL FACTUAL ELEMENTS .............................................37

BREACH OF CONTRACT ─ ESSENTIAL FACTUAL ELEMENTS ...............................................40

BREACH OF CONTRACT ─RESTRICTIVE COVENANTS ..............................................................43

BREACH OF CONTRACT DAMAGES        44

504.1 INTRODUCTION TO CONTRACT DAMAGES .......................................................................44

AIDING AND ABETTING INSTRUCTION 45

451.5 BREACH OF FIDUCIARY DUTY...............................................................................................47

TORTIOUS INTERFERENCE INSTRUCTIONS        49

408.2 SUMMARY OF CLAIMS OR CONTENTIONS........................................................................49

408.3 GREATER WEIGHT OF THE EVIDENCE.................................................................................50

408.6 ISSUES ON PLAINTIFF'S CLAIM ─ INTERFERENCE WITH BUSINESS RELATIONS
OR WITH CONTRACT TERMINABLE AT WILL..........................................................................51

408.4 LEGAL CAUSE – INTERFERENCE WITH A BUSINESS RELATIONSHIP.......................56

408.11 TORTIOUS INTERFERENCE DAMAGES ...............................................................................57

408.7 AFFIRMATIVE DEFENSE — COMPETITION........................................................................61

408.8 AFFIRMATIVE DEFENSE — FINANCIAL INTEREST .........................................................63

408.9 UNJUSTIFIED CONDUCT — MALICE .....................................................................................64

UNFAIR OR DECEPTIVE ACTS OR PRACTICES: HAW. REV. STAT. §480-2        66

iii

TO PREVAIL AGAINST DEFENDANTS ON THE CLAIM OF UNFAIR OR DECEPTIVE ACTS OR PRACTICES, INNERWORKINGS MUST PROVE ALL OF THE FOLLOWING ELEMENTS: **Error! Bookmark not defined.**

INNERWORKINGS IS A "CONSUMER;" AND     **Error! Bookmark not defined.**

DEFENDANTS ENGAGED IN AN ACT OR PRACTICE THAT WAS UNFAIR OR DECEPTIVE; AND   **Error! Bookmark not defined.**

THE UNFAIR OR DECEPTIVE ACT OR PRACTICE OCCURRED IN THE CONDUCT OF TRADE OR COMMERCE; AND     **Error! Bookmark not defined.**

THE UNFAIR OR DECEPTIVE ACT OR PRACTICE WAS A LEGAL CAUSE OF DAMAGES TO INNERWORKINGS.     **Error! Bookmark not defined.**

HAW. REV. STAT. §§ 480-1, 480-2(A), (D), & 480-13.        **Error! Bookmark not defined.**

CONSPIRACY INSTRUCTIONS     67

CONSPIRACY ...................................................................................................................... 67

AFFIRMATIVE DEFENSES   69

416.33 AFFIRMATIVE DEFENSE – EQUITABLE ESTOPPEL ........................................................... 69

416.30 AFFIRMATIVE DEFENSE – WAIVER.................................................................................... 71

504.9 MITIGATION OF DAMAGES .................................................................................................... 73

iv

## PRELIMINARY INSTRUCTIONS

## 1.1 GENERAL PRELIMINARY INSTRUCTION

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see

1

it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

2

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

3

·the witness's opportunity and ability to see, hear, or know the things
 the witness is testifying about;

·the witness's memory;

·the witness's manner while testifying;

·any interest the witness has in the outcome of the case;

·any bias or prejudice the witness may have;

·any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the
 evidence; and

·any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a

witness's credibility.

<u>Description of the case</u>:

This is a civil case. To help you follow the evidence, I'll summarize the

parties' positions. The Plaintiff, InnerWorkings, Inc., claims the Defendants, Smart

Source LLC and Sara Horn, engaged in a course of conduct that caused the

destruction of its business in Hawaii, and is seeking as damages the value of that

business as of February 14, 2020, the date of its alleged destruction. InnerWorkings

alleges that both Defendants misappropriated its alleged trade secrets; that Horn

breached certain provisions of an alleged contract with InnerWorkings; that both

Defendants aided and abetted another former InnerWorkings employee's alleged

breach of his fiduciary duty of loyalty to InnerWorkings; that both Defendants

4

tortiously interfered with InnerWorkings's alleged customer relationships; that Smart Source tortiously interfered with InnerWorkings's alleged contract with Horn; that both Defendants engaged in unfair methods of competition; and that both Defendants and Ray Evans, a former InnerWorkings employee, engaged in a civil conspiracy with each other.

Smart Source and Ms. Horn deny those claims and further deny that InnerWorkings is entitled to any of the relief of damages sought. Defendants assert numerous defenses to InnerWorkings's claims, but most notably, the facts are undisputed that: InnerWorkings continued to generate new sales; InnerWorkings retained employees in Hawaii after February 14, 2020; and InnerWorkings has no evidence from any customer to establish that any customer ceased working with InnerWorkings as a result of Defendants' alleged conduct.  Smart Source and Ms. Horn raise several defenses to InnerWorkings' claims, including that Innerworkings deliberately conceals from its employees, including Horn, the fact that it is attempting to bind them to unlawful non-compete and non-solicitation terms, and fails to disclose the terms of those agreements to the employees allegedly bound; that those terms, called restrictive covenants, are unenforceable; that InnerWorkings employees left the company because they were dissatisfied with its compensation scheme; that InnerWorkings claims are barred because it

5

failed to provide Ms. Horn with a copy of the alleged agreement when she left and after she joined Smart Source; that Smart Source and Ms. Horn were not the cause of any damages InnerWorkings experienced; and that InnerWorkings has no claim for tortious interference against Smart Source because Smart Source had the privilege of lawful competition.

<u>Burden of proof</u>:

InnerWorkings has the burden of proving its case by what the law calls a "preponderance of the evidence." That means InnerWorkings must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring InnerWorkings and the evidence favoring Smart Source and Ms. Horn on opposite sides of balancing scales, InnerWorkings needs to make the scales tip to its side. If InnerWorkings fails to meet this burden, you must find in favor of Smart Source and Ms. Horn.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

6

On certain issues, called "affirmative defenses," Smart Source and Ms. Horn have the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Smart Source and Ms. Horn must prove for any affirmative defense. After considering all the evidence, if you decide that Smart Source and Ms. Horn have successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

<u>Conduct of the jury</u>:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone

7

calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a

8

verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, InnerWorkings will present its witnesses and ask them questions. After InnerWorkings questions the witness, Smart Source and Ms. Horn may ask the witness questions – this is called "cross-examining" the witness. Then Smart

9

Source and Ms. Horn will present their witnesses, and InnerWorkings may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

## 1.2 BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE

Sometimes a party has the burden of proving a claim or defense by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain. The court will tell you when to apply this standard.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

11

## 1.4 JURY QUESTIONS

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

Here are several important things to keep in mind about your questions for

the witnesses:

· First, you must submit all questions in writing. Please don't ask any
  questions aloud.

· Second, the court can't re-call witnesses to the stand for additional
  juror questions. If you have a question for a particular witness, you
  must submit it when I ask.

· Finally, because you should remain neutral and open-minded
  throughout the trial, you should phrase your questions in a way
  that doesn't express an opinion about the case or a witness. You
  must keep an open mind until you've heard all the evidence, the
  closing arguments, and my final instructions on the law.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

13

## 1.5 INTERIM STATEMENTS

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

14

## TRIAL INSTRUCTIONS

### 2.2 USE OF DEPOSITIONS

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

15

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## 2.5 JUDICIAL NOTICE

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## 2.1 STIPULATIONS

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## BASIC INSTRUCTIONS

### 3.2.2 THE DUTY TO FOLLOW INSTRUCTIONS – CORPORATE PARTY INVOLVED

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

## 3.3 CONSIDERATION OF DIRECT AND CIRCUMSTANTIAL EVIDENCE; ARGUMENT OF COUNSEL; COMMENTS BY THE COURT

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

19

## 3.4 CREDIBILITY OF WITNESSES

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

### 3.5.1 IMPEACHMENT OF WITNESSES BECAUSE OF INCONSISTENT STATEMENTS

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

21

### 3.6.1 EXPERT WITNESS

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

22

### 3.7.1 RESPONSIBILITY FOR PROOF – PLAINTIFF'S CLAIMS – PREPONDERANCE OF THE EVIDENCE

In this case it is the responsibility of InnerWorkings to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that InnerWorkings' claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against InnerWorkings.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of InnerWorkings' claims by a preponderance of the evidence, you should find for Smart Source or Ms. Horn (or both) as to that claim.

**ANNOTATIONS AND COMMENTS**

23

No annotations associated with this instruction.

### 3.7.2 RESPONSIBILITY FOR PROOF – AFFIRMATIVE DEFENSE PREPONDERANCE OF THE EVIDENCE

In this case, Smart Source and Ms. Horn assert affirmative defenses as follows:

1) The restrictive covenants InnerWorkings seeks to enforce are invalid and unenforceable because Sara Horn did not enter into any agreement with InnerWorkings; there was no mutual assent and InnerWorkings concealed the agreements from Horn upon acceptance and upon her departure.

2) The restrictive covenants InnerWorkings seeks to enforce constitute an unlawful restraint on trade because they are overbroad in terms of time and geographic scope.

3) Smart Source and Sara Horn were not the proximate cause of InnerWorkings' losses

4) InnerWorkings' own actions led to any damages they suffered.

5) InnerWorkings' tortious interference claims are defeated by Smart Source and Sara Horn's privilege of lawful competition

6) InnerWorkings has failed to establish that they are entitled to punitive damages.

25

7) The information InnerWorkings claims constitute trade secrets because they were readily ascertainable.

Even if InnerWorkings proves any of its claims by a preponderance of the evidence, Smart Source and Ms. Horn can prevail on this claim if they prove an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that Smart Source and Ms. Horn do not have to disprove InnerWorkings claims, but if the Smart Source or Ms. Horn raise an affirmative defense, the only way it can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

26

## 3.8.1 DUTY TO DELIBERATE WHEN ONLY THE PLAINTIFF CLAIMS DAMAGES

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

<u>ANNOTATIONS AND COMMENTS</u>

No annotations associated with this instruction.

27

## TRADE SECRETS INSTRUCTIONS

## 11.1 TRADE SECRETS - MISAPPROPRIATION OF A TRADE SECRET

InnerWorkings claims that Smart Source and Ms. Horn misappropriated a trade secret belonging to InnerWorkings.

To prove its claim, InnerWorkings must prove the following facts by a preponderance of the evidence:

  1: InnerWorkings owns a valid trade secret; and

  2: That trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce, that InnerWorkings calls Transactional Projections, (2) Warehouse Inventory Report, and (3) changes to employee compensation; and

  3: Smart Source and Ms. Horn misappropriated that trade secret.

InnerWorkings claims it owns trade secrets consisting of: (i) Transactional Projections; (ii) Warehouse Inventory Report; and (iii) changes to employee compensation.  To prove that InnerWorkings owns those trade secrets, it must prove that the Transactional Projections, Warehouse Inventory Report, and changes to employee compensation are its property.

Trade Secret.  A trade secret may take many forms, including all forms and types of financial, business, scientific, technical, economic, or engineering information.  A trade secret may include patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes,

28

procedures, programs, or codes.  A trade secret may be tangible or intangible.  A trade secret does not have to be stored, compiled, or memorialized.  But if it is, it does not have to be stored, compiled, or memorialized in any particular manner, such as physically, electronically, graphically, photographically, or in writing.

To qualify as a trade secret, InnerWorkings, must prove the following by a preponderance of the evidence:

1: Transactional Projections, Warehouse Inventory Report, and changes to employee compensation are not generally known to another person who can obtain economic value from the disclosure or use of the information;

2: Another person cannot readily discover the Transactional Projections, Warehouse Inventory Report, and changes to employee compensation through proper means;

3: The Transactional Projections, Warehouse Inventory Report, and changes to employee compensation derive independent economic value, actual or potential, from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; and

4: InnerWorkings has taken reasonable steps to keep the Transactional Projections, Warehouse Inventory Report, and changes to employee compensation secret.

<u>Interstate or Foreign Commerce.</u>   InnerWorkings claims that the Transactional Projections, Warehouse Inventory Report, and changes to employee compensation relate to a product or service used in, or intended for use in, interstate or foreign commerce.  Use or intended use of the product or service in

29

interstate commerce means that the product or service involves travel, trade, transportation, or communication between a place in one state and a place in another state. Use of the product or service in foreign commerce means that the product or service involves travel, trade, transportation, or communication between a place in the United States and a place outside of the United States.

Misappropriation. InnerWorkings claims that Smart Source and Ms. Horn acquired, disclosed, or used Transactional Projections, Warehouse Inventory Report, and changes to employee compensation without the right to do so. This is called "misappropriation."

For InnerWorkings to prove that Smart Source and Ms. Horn misappropriated Transactional Projections, Warehouse Inventory Report, and changes to employee compensation, InnerWorkings must prove the following by a preponderance of the evidence:

1: Smart Source and Ms. Horn acquired, disclosed, or used the trade secrets without InnerWorkings' express or implied consent; and

2: Smart Source and Ms. Horn knew or should have known that the trade secrets

i. were derived from or through a third person who used improper means to acquire the trade secrets;

ii. were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets, or

30

iii. were derived from or through a third person who was under a duty to maintain the secrecy of or limit the use of the trade secrets.

"Improper means" may include theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, and espionage through electronic or other means.

Each act of acquiring, disclosing, or using the trade secrets may constitute a separate act of misappropriation.

"Express consent" is consent that is clearly and unmistakably stated. "Implied consent" is consent that is inferred from one's conduct rather than from one's direct expression.

## ANNOTATIONS AND COMMENTS

**Private Right of Action**.  *See* 18 U.S.C. § 1836(b)(1).

**Owner**.  The Defend Trade Secrets Act of 2016 defines "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed."  18 U.S.C. § 1839(4).  The court will need to give an appropriate instruction if the plaintiff claims a right to the trade secret other than through legal title.

**Definition of Trade Secret**.  Section 4 of the Defend Trade Secrets Act states that "trade secret ha[s] the meaning[] given . . . in section 1839 of title 18, United States Code," which defines trade secret as follows:

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled,

31

or memorialized physically, electronically, graphically, photographically, or in writing if--

**(A)** the owner thereof has taken reasonable measures to keep such information secret; and

**(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). The legislative history to the Defend Trade Secrets Act provides that the "definition of a trade secret [is not] meaningfully different from the scope of that definition as understood by courts in states that have adopted the [Uniform Trade Secrets Act]." S. Rep. No. 114-220, at 10 (2016). The legislative history also notes that a trade secret consists of three parts: "(1) information that is non-public; (2) the reasonable measure taken to protect that information; and (3) the fact that the information derives independent economic value from not being publicly known." H.R. Rep. No. 114-529, at 2 (2016).

**Interstate Commerce**. *See* 18 U.S.C. § 1836(b)(1). The legislative history notes that the "jurisdictional nexus to interstate or foreign commerce is identical to the existing language required for Federal jurisdiction over the criminal theft of a trade secret under § 1832(a)." S. Rep. No. 114-220, at 5 (2016).

**Misappropriation**. *See* 18 U.S.C. § 1839(5).

**Improper Means**. *See* 18 U.S.C. § 1839(6).

**Consent**. *See* 18 U.S.C. § 1839(5).

Hawaii has adopted the Uniform Trade Secret Act, HRS § 492B-1, which in all material aspects is the same as the federal Defense of Trade Secrets Act,

*ACTIVE 689227245v3*

## 11.4 TRADE SECRETS – DAMAGES – COMPENSATORY

If InnerWorkings has not proved its claim for misappropriation of trade secrets, your verdict must be for Smart Source and Ms. Horn on this claim, and you do not consider damages.

If InnerWorkings has proved its claim for misappropriation of trade secrets, you must decide the issue of damages.

InnerWorkings has asserted that it seeks as damages the value of its operations in Hawaii as of February 14, 2020, which it claims is the date on which Defendants completely destroyed that business.  That measure of damages is discussed in connection with the tortious interference instructions, which I will describe later in these instructions.

33

## 11.5 TRADE SECRETS – DAMAGES – EXEMPLARY

If you find that Smart Source and Ms. Horn has engaged in willful and malicious misappropriation of the trade secret, you may award "exemplary" damages, that is, damages meant to make an example of Smart Source and Ms. Horn. Exemplary damages may be awarded in an amount not more than two (2) times the amount awarded for compensatory damages.

## ANNOTATIONS AND COMMENTS

*See* 18 U.S.C. § 1836(b)(3)(C). The exemplary damages language in the Defend Trade Secrets Act is similar to § 3(b) of the Uniform Trade Secrets Act. *See* S. Rep. No. 114-220, at 9 (2016); H.R. Rep. 114-529, at 13 (2016).

Exemplary damages (and attorneys' fees) are limited in certain circumstances. *See* 18 U.S.C. § 1833(b)(3)(C).

34

## BREACH OF CONTRACT INSTRUCTIONS

## 416.1 BREACH OF CONTRACT — INTRODUCTION

InnerWorkings claims that it and Ms. Horn entered into a restrictive covenant agreement with it in connection with the grant of certain stock options in 2018.

InnerWorkings claims that the restrictive covenants included a confidentiality covenant, a non-competition covenant, a non-solicitation of customers covenant, and a non-solicitation of employees covenant.

InnerWorkings claims that Ms. Horn violated these restrictive covenants by working for a competitor, disclosing confidential information, and soliciting customers and employees, and that the violations resulted in damages to InnerWorkings.

Ms. Horn denies that she entered into a restrictive covenant agreement with InnerWorkings. Ms. Horn also asserts that there was no mutual assent to enter into such an agreement because InnerWorkings concealed it upon her alleged "acceptance," upon departure, when she asked InnerWorkings whether any such agreement existed, and after her departure, when she asked InnerWorkings to

35

provide her with a copy of any such agreement, which InnerWorkings failed to do.

**NOTE ON USE FOR 416.1**

This instruction is intended to introduce the jury to the issues involved in the case. It should be read before the instructions on the substantive law.

36

## CONTRACT FORMATION — ESSENTIAL FACTUAL ELEMENTS

InnerWorkings claims that the parties entered into a contract. To prove that a contract was created, InnerWorkings must prove all of the following:

1.      The essential contract terms were clear enough that the parties could understand what each was required to do;

2.      The parties agreed to give each other something of value. [A promise to do something or not to do something may have value]; and

3.      The parties agreed to the essential terms of the contract. When you examine whether the parties agreed to the essential terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement.  The making of a contract depends only on what the parties said or did.  You may not consider the parties' thoughts or unspoken intentions.

*Note: If neither offer nor acceptance is contested, then element #3 should not be given.*

If InnerWorkings did not prove all of the above, then a contract was not created.

## NOTE ON USE FOR 416.3

37

This instruction should be given only when the existence of a contract is contested. If both parties agree that they had a contract, then the instructions relating to whether a contract was actually formed would not need to be given. At other times, the parties may be contesting only a limited number of contract formation issues. Also, some of these issues may be decided by the judge as a matter of law. Users should omit elements in this instruction that are not contested so that the jury can focus on the contested issues. Read the bracketed language only if it is an issue in the case.

## SOURCES AND AUTHORITIES FOR 416.3

1. The general rule of contract formation was enunciated by the Florida Supreme Court in *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004) ("An oral contract ... is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms.").

2. The first element of the instruction refers to the definiteness of essential terms of the contract. "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." *Lanza v. Damian Carpentry, Inc.*, 6 So.3d 674, 676 (Fla. 1st DCA 2009). *See also Leesburg Community Cancer Center v. Leesburg Regional Medical Center*, 972 So.2d 203, 206 (Fla. 5th DCA 2007) ("We start with the basic premise that no person or entity is bound by a contract absent the essential elements of offer and acceptance (its agreement to be bound to the contract terms), supported by consideration.").

3. The second element of the instruction requires giving something of value. In Florida, to constitute valid consideration there must be either a benefit to the promisor or a detriment to the promisee. *Mangus v. Present*, 135 So.2d 417, 418 (Fla. 1961). The detriment necessary for consideration need not be an actual loss to the promisee, but it is sufficient if the promisee does something that he or she is not legally bound to do. *Id.*

4. The final element of this instruction requires an objective test. "[A]n objective test is used to determine whether a contract is enforceable." *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla. 1985). The intention as expressed controls rather than the intention in the minds of the parties. "The making of a contract depends not on the agreement of two minds in one intention, but on the agreement

38

of two sets of external signs-not on the parties having meant the same thing but on their having said the same thing." *Gendzier v. Bielecki*, 97 So.2d 604, 608 (Fla. 1957).

39

## BREACH OF CONTRACT — ESSENTIAL FACTUAL ELEMENTS

To recover damages from Ms. Horn for breach of an alleged restrictive covenant agreement, InnerWorkings must prove all of the following:

1. InnerWorkings and Ms. Horn entered into a restrictive covenant agreement;

2. the agreement was ancillary to a valid transaction;

3. the agreement was supported by consideration;

4. the agreement contained reasonable restraints;

5. Ms. Horn engaged in conduct that violated the restrictive covenant agreement; and

6. InnerWorkings was damaged by Ms. Horn's violation.

## SOURCES AND AUTHORITIES FOR 416.4

1. Illinois law

   a. An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). This general rule was enunciated by various

40

Florida district courts of appeal. See *Murciano v. Garcia*, 958 So. 2d 423, 423-24 (Fla. 3d DCA 2007); *Abbott Laboratories, Inc. v. General Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000); *Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253, 255 (Fla. 2d DCA 1994); *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977).

2.      To maintain an action for breach of contract, a claimant must first establish performance on the claimant's part of the contractual obligations imposed by the contract. *Marshall Construction, Ltd. v. Coastal Sheet Metal & Roofing, Inc.*, 569 So. 2d 845, 848 (Fla. 1st DCA 1990). A claimant is excused from establishing performance if the defendant anticipatorily repudiated the contract. *Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*, 411 So. 2d 181, 182-83 (Fla. 1982). Repudiation constituting a prospective breach of contract may be evidenced by words or voluntary acts but refusal must be distinct, unequivocal and absolute. *Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla. 3d DCA 1980).

3.      "Substantial performance is performance 'nearly equivalent to what was bargained for.'" *Strategic Resources Grp., Inc. v. Knight-Ridder, Inc.*, 870 So. 2d 846, 848 (Fla. 3d DCA 2003). "Substantial performance is that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price subject to the promisor's right to recover whatever damages may have been occasioned him by the promisee's failure to render full performance." *Ocean Ridge Dev. Corp. v. Quality Plastering, Inc.*, 247 So. 2d 72, 75 (Fla. 4th DCA 1971).

4.      The doctrine of substantial performance applies when the variance from the contract specifications is inadvertent or unintentional and unimportant so that the work actually performed is substantially what was called for in the contract. *Lockhart v. Worsham*, 508 So. 2d 411, 412 (Fla. 1st DCA 1987). "In the context of contracts for construction, the doctrine of substantial performance is applicable only where the contractor has not willfully or materially breached the terms of his contract or has not intentionally failed to comply with the specifications." *National Constructors, Inc. v. Ellenberg*, 681 So. 2d 791, 793 (Fla. 3d DCA 1996).

41

5.      "There is almost always no such thing as 'substantial performance' of payment between commercial parties when the duty is simply the general one to pay." *Hufcor/Gulfstream, Inc. v. Homestead Concrete & Drainage, Inc.*, 831 So. 2d 767, 769 (Fla. 4th DCA 2002).

42

## BREACH OF CONTRACT — RESTRICTIVE COVENANTS

As the contracts at issue in this action involve the enforcement of restrictive covenants, the Parties agree that the following additional law applies:


To establish that the restrictive covenants contained within a contract are

enforceable, InnerWorkings must prove all of the following:


(1) The restraint on trade imposed by the restrictive covenant is 'no greater than is required for the protection of a legitimate business interest of the employer-promisee';

(2) The restraint on trade does not impose undue hardship on the employee; and

(3) The restraint on trade is not injurious to the public.


Source: *Dressander v. Simplicity Financial Marketing, Inc.*, 2023 WL 2561733, at *10 (N.D. Ill. Mar. 17, 2023) (quoting *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396–97 (Ill. 2011)).

43

BREACH OF CONTRACT DAMAGES

504.1 INTRODUCTION TO CONTRACT DAMAGES

If you find for Ms. Horn, you will not consider the matter of damages. But, if you find for InnerWorkings, you should award InnerWorkings an amount of money that the greater weight of the evidence shows will fairly and adequately compensate InnerWorkings for its damages. InnerWorkings has identified the market value of its Hawaii-based operations as the measure of damages based on its claim that the Hawaii-based operations were "completely destroyed."  That measure of damages is discussed in connection with the tortious interference instructions, which I will describe later in these instructions.

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## <u>AIDING AND ABETTING INSTRUCTION</u>

One way Smart Source and Horn may be found liable for breach of fiduciary duty owed to InnerWorkings by Ray Evans is if you find that they aided and abetted Evans who breached his fiduciary duty of loyalty owed to InnerWorkings. To prove Smart Source and Horn liable for aiding and abetting such a violation against InnerWorkings, InnerWorkings must prove by a preponderance of the evidence:

- First, that a breach of fiduciary duty (as I will define them for you in a moment) was committed by some person or persons;

- Second, Smart Source and Horn substantially assisted some person or persons who personally committed or caused the violations; and

- Third, the defendant knew or should have known, that his actions would assist in the illegal or wrongful activity at the time he provided the assistance.

The defendant need not have known the specific violations that those persons intended to commit. It is sufficient if the defendant was aware that one of a

45

number of violations would probably be committed, and one of those violations was in fact committed.

*Authorities:*

Torture Victim Protection Act of 1991, 28 U.S.C. § 1350, note; S. Rep. No. 249, 102nd Cong., 1st Sess. (1991); *Halberstam v. Welch*, 705 F.2d 472, 477, 481-484 (D.C. Cir. 1983); *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994), *modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *Barrueto v. Fernández-Larios*, 205 F. Supp. 2d 1325, 1331-1333 (S.D. Fla. 2002); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 1355-1356 (N.D. Ga. 2002); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 24 F. Supp. 2d 289, 321-324 (S.D.N.Y. 2003).

46

## 451.5  BREACH OF FIDUCIARY DUTY

InnerWorkings claims that Smart Source and Ms. Horn aided and abetted Ray Evans in breaching a fiduciary duty he owed to InnerWorkings and was damaged as a result.

You must decide whether Evans breached a fiduciary duty to InnerWorkings and whether the breach was a legal cause of damages.

A breach of a fiduciary duty occurs when a fiduciary failed to act with the utmost good faith, fairness, and honesty and:

a.      failed to protect InnerWorkings' financial or property interests; or

b.      failed to protect InnerWorkings' confidential information; or

c.      used such information to the detriment of InnerWorkings

and breach of the fiduciary duty is a legal cause of damage to InnerWorkings.

NOTES ON USE FOR 451.5

1.      These instructions have been prepared to cover many of the circumstances under which fiduciary duties have been held to arise. Courts have described the standard for a fiduciary's duty as being "the finest and highest loyalty," *Donahue v. Davis*, 68 So. 2d 163 (Fla. 1953), and "utmost good faith, fairness and honesty," *Gossett v. St. Paul Fire and Marine Insurance Co.*, 427 So. 2d 386, 387 (Fla. 4th DCA 1983). The choice of the particular standard or standards will depend on the circumstances that give rise to the fiduciary duty. Other standards not listed in this instruction may apply.

47

2.      A breach of fiduciary duty can be negligent or intentional. *Palafrugell Holdings, Inc. v. Cassel*, 825 So. 2d 937, 939 n.1 (Fla. 3d DCA 2001).

3.      As the facts dictate, appropriate defense instructions may be necessary.

4.      In the appropriate case, the court should consider whether to give instructions on concurring or intervening cause.

48

## TORTIOUS INTERFERENCE INSTRUCTIONS

### 408.2  SUMMARY OF CLAIMS OR CONTENTIONS

The claims and defenses in this case are as follows.

InnerWorkings claims that defendant Smart Source intentionally and unjustifiably interfered with InnerWorkings' contracts with Ms. Horn, which caused harm to InnerWorkings.

InnerWorkings also claims that Smart Source and Ms. Horn intentionally and unjustifiably interfered with InnerWorkings' business relations with certain customers, which caused harm to InnerWorkings.

Smart Source and Ms. Horn deny these claims and also claims that they were entitled to the privilege of lawful competition; and that InnerWorkings' business losses, if any, were not caused by Smart Source or Ms. Horn.

The parties must prove all claims and defenses by the greater weight of the evidence. I will now define some of the terms you will use in deciding this case.

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## 408.3  GREATER WEIGHT OF THE EVIDENCE

"Greater weight of the evidence" means the more persuasive and

convincing force and effect of the entire evidence in the case.

NOTES ON USE FOR 408.3

1.      Greater or lesser number of witnesses. The committee recommends that no instruction be given regarding the relationship (or lack of relationship) between the greater weight of the evidence and the greater or lesser number of witnesses.

2.      Circumstantial evidence. The committee recommends that no instruction generally be given distinguishing circumstantial from direct evidence. *See Nielsen v. City of Sarasota*, 117 So. 2d 731 (Fla. 1960).

50

### 408.6  ISSUES ON PLAINTIFF'S CLAIM — INTERFERENCE WITH BUSINESS RELATIONS OR WITH CONTRACT TERMINABLE AT WILL

The issues for you to decide on InnerWorkings' claim against Smart Source and Ms. Horn are whether Smart Source and Ms. Horn intentionally and unjustifiably interfered with business relations between InnerWorkings and: 1) its employees, and 2) certain customers; and if so, whether such interference was the legal cause of loss to InnerWorkings.

To be liable for interfering with the business relationship between InnerWorkings and its employees, Smart Source and Ms. Horn must have acted intentionally to interfere with the business relationship. A company or person interferes with a business relationship between two other persons if they induce or otherwise cause one of them to terminate the relationship. Therefore, Smart Source and Ms. Horn must have known of the existence of the business relationship, and they must have either intended to cause the breach of the business relationship or acted knowing that their actions were likely to cause that result.

InnerWorkings must identify the customers and/or employees with whose business relationship it claims Smart Source and Ms. Horn interfered.

InnerWorkings does not have to prove that it had an enforceable contract with its employees if it can prove that the employees would have complied with

51

the business relationship if Smart Source and Ms. Horn had not improperly interfered.

Smart Source and Ms. Horn must have also acted unjustifiably. InnerWorkings must prove that Smart Source and Ms. Horn acted unjustifiably because Smart Source and Ms. Horn committed improper acts.

A person who interferes with another's business relations using ordinary business methods of competition does not interfere improperly. But one who uses illegal or improper conduct has no privilege to use those methods, and interference using such methods is improper.

If the greater weight of the evidence does not support InnerWorkings' claim, then your verdict should be for Smart Source and Ms. Horn. However, if the greater weight of the evidence supports InnerWorkings' claim, then you shall consider the defenses raised by Smart Source and Ms. Horn.

To be liable for interfering with the business relationship between InnerWorkings and its customers, Smart Source and Ms. Horn must have acted intentionally to interfere with the business relationship. A company or person interferes with a business relationship between two other persons if they induce or otherwise cause one of them to terminate the relationship. Therefore, Smart Source and Ms. Horn must have known of the existence of the business

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

relationship, and they must have either intended to cause the breach of the relationship or acted knowing that their actions were likely to cause that result.

InnerWorkings does not have to prove that it had an enforceable contract with its customers if it can prove that the customers would have continued with the business relationship if Smart Source and Ms. Horn had not improperly interfered.

Smart Source and Ms. Horn must have also acted unjustifiably. InnerWorkings must prove that Smart Source and Ms. Horn acted unjustifiably because Smart Source and Ms. Horn committed improper acts.

A person who interferes with another's business relations using ordinary business methods of competition does not interfere improperly. But one who uses illegal or improper conduct has no privilege to use those methods, and interference using such methods is improper.

If the greater weight of the evidence does not support InnerWorkings' claim, then your verdict should be for Smart Source and Ms. Horn. However, if the greater weight of the evidence supports InnerWorkings' claim, then you shall consider the defenses raised by Smart Source and Ms. Horn.

NOTES ON USE FOR 408.6

1.      Interference with identifiable customers must be proved. *See Ferguson Transportation, Inc. v. North American Van Lines, Inc.*, 687 So. 2d 821 (Fla.

1996); *Insurance Field Services, Inc. v. White and White Inspection and Audit Service*, Inc., 384 So. 2d 303 (Fla. 5th DCA 1980).

2.      A business relationship or prospective business relationship does not need to be evidenced by an enforceable contract to be the subject of improper interference. *Charles Wallace Co. v. Alternative Copier Concepts, Inc.*, 583 So. 2d 396, 397 (Fla. 2d DCA 1991) ("The business relationship does not have to be the product of an enforceable contract. Instead, an action for intentional interference with a business relationship or expectancy will lie if the parties' understanding would have been completed if the defendant had not interfered.")

3.      Ill will, malice, or fraud is not an essential element of the claimant's claim where there is an intentional interference with a contract right or business relationship. *McDonald v. McGowan*, 402 So. 2d 1197, 1201 (Fla. 5th DCA 1981); *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980) ("[I]t is irrelevant whether the person who takes authorized steps to protect his own interests does so while also harboring some personal malice or ill-will towards the claimant that is, in this context, that Ethyl's employees, while attempting to protect its economic situation, also may have happened to dislike Balter personally.").

4.      The two most common bases for interference claimed to be "proper" or "justified" are the defendant's competitive purposes or his financial interest in the business of the third person whose relationship with claimant was interrupted. See RESTATEMENT (2D) OF TORTS §§768, 769. The committee has therefore included in instruction 408.6 the substance of the issues to be considered in those situations. The committee has not attempted to include the substance of any other issues on this point, e.g., id. §767, which may control other cases or a First Amendment privilege. In such cases, instructions like 408.7 and 408.8 should be modified accordingly.

5.      For a discussion of "unjustifiably," see GNB, Inc. v. United Danco Batteries, Inc., 627 So. 2d 492, 494 (Fla. 2d DCA 1993) (Altenbernd, J. dissenting). The majority opinion in GNB stated that "the dissent's explanation of the applicable law [was] entirely correct," while disagreeing with the dissent's view of the evidence and its conclusion that appellant was entitled to a directed verdict. Id. at 493.

6.      "[T]ortious interference with a contract and tortious interference

54

with a business relationship are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship." *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976) (quoted in *St. Johns River Water Mgmt. Dist. v. Fernberg Geological Services, Inc.*, 784 So. 2d 500, 504 n. 4 (Fla. 5th DCA 2001)).

(Amended February 17, 2022.)

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## 408.4  LEGAL CAUSE – INTERFERENCE WITH A BUSINESS RELATIONSHIP

a.      Legal cause generally:

Interference with a business relationship is a cause of loss if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage, so that it can reasonably be said that, but for the interference with a business relationship, the loss would not have occurred.

NOTES ON USE FOR 408.4

1.      Instruction 408.4a (legal cause generally) is to be given in all cases.

2.      The term "substantially" is used throughout the instruction to describe the extent of contribution or influence tortious interference must have to be regarded as a legal cause. "Substantially" was chosen because the word has an acceptable common meaning and because it has been approved in Florida as a test of causation in relation to defendant's conduct. *Loftin v. Wilson*, 67 So. 2d 185, 191 (Fla. 1953).

(Revised February 17, 2022.)

56

## 408.11 TORTIOUS INTERFERENCE DAMAGES

If you find for Smart Source and Ms. Horn, you will not consider the matter of damages. But, if you find for InnerWorkings, you should award InnerWorkings an amount of money that the greater weight of the evidence shows will fairly and adequately compensate InnerWorkings for such loss as the greater weight of the evidence shows was caused by Smart Source and Ms. Horn's interference with the business relationships.

InnerWorkings has claimed that it is entitled to damages for the total destruction of its Hawaii-based operations.  To award InnerWorkings damages, you must find the following:

1) That InnerWorkings operations in Hawaii constituted a separate and discrete "business" within InnerWorkings, Inc.;

2) That the Hawaii-based operations of InnerWorkings were completely destroyed by Smart Source and Horn's actions as of February 14, 2020;

3) That InnerWorkings has established its damages with reasonable certainty by evidence of the market value of the Hawaii-based operations as of February 14, 2020.

57

NOTE ON USE FOR 408.11

1.      The Supreme Court of Florida stated that the claimant in *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812 (Fla. 1984), was entitled to the damages "reasonably flowing" from the defendant's interference with the claimant's existing business relationships. *Id.* at 815. Florida caselaw, however, does not delineate the types of damages that are recoverable for tortious interference claims.

2.      The committee takes no position on the types of recoverable damages for tortious interference claims. One view is expressed by the RESTATEMENT (2D) OF TORTS § 774A. It provides for recovery of:

(a)      the pecuniary loss of the benefits of the contract or the prospective relation;

(b)      consequential losses for which the interference is a legal cause; and

(c)      actual harm to reputation, if it is reasonably to be expected to result from the interference.

Moreover, subsection 774A(d) explains that the action for interference with contract is one in tort and damages are not based on contract rules, i.e., it is not required that the loss incurred be one within the contemplation of the parties to the contract itself at the time it was made. The claimant can also recover for consequential harms, provided they were legally caused by the defendant's interference.

3.      A problem with damages in the context of intentional interference claims is whether they can be proved with a reasonable degree of certainty. *See* general discussion in RESTATEMENT (2D) OF TORTS § 912, especially comments d and f. Florida has significant case law on the claimant's burden of proof on damages. *See, e.g., Ethan Allen*, 647 So. 2d at 812; *Insurance Field Services, Inc. v. White and White Inspections and Audit Services, Inc.*, 384 So. 2d 303 (Fla. 5th DCA 1980); *Ferguson Transportation, Inc. v. North American Van Lines, Inc.*, 687 So. 2d 821 (Fla. 1996).

(Adopted February 17, 2022.)

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

59

## 504.4 DAMAGES FOR COMPLETE DESTRUCTION OF BUSINESS

If InnerWorkings proved that Smart Source and Ms. Horn completely destroyed InnerWorkings' business, then you must award InnerWorkings damages based upon the market value of InnerWorkings' business on the date InnerWorkings' business was destroyed.

## NOTE ON USE FOR 504.4

The court should give this instruction when the claimant seeks damages for the complete destruction of a business. If a business has not been completely destroyed, then damages based upon the market value of the business are not appropriate, and the court should not give this instruction. Because InnerWorkings has disclaimed recovering damages for lost profits, that instruction should not be given.

## SOURCES AND AUTHORITIES FOR 504.4

1. "If a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss. If the business is not completely destroyed, then it may recover lost profits. A business may not recover both lost profits and the market value of the business." *Montage Grp., Ltd. v. Athle-Tech Computer Systems, Inc.*, 889 So.2d 180, 193 (Fla. 2d DCA 2004) (citations omitted).

2. "Market value," as used in this instruction, is not meant to suggest a particular approach to determining market value. *See, e.g.*, *Fidelity Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc.*, 74 So.3d 506, 514 n.5 (Fla. 4th DCA 2011) (discussing various approaches).

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## 408.7 AFFIRMATIVE DEFENSE — COMPETITION

Defendants have asserted that their conduct was justified as lawful competition. If you find that defendants' conduct related to competition between defendants and InnerWorkings was motivated, at least in part, by such competition, and defendants did not use improper means to compete, then defendants' conduct was justified.

NOTES ON USE FOR 408.7

1. This instruction may be given when the alleged interference is directed at a contract terminable at will or a business relation. See Perez v. Rivera, 534 So. 2d 914, 916 (Fla. 3d DCA 1988) ("If the defendant can prove that the interference was lawful competition—a privilege which the courts recognize when a contract is terminable at will—the defendant will not be found to have committed the tort of wrongful business interference."); see also Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc., 629 So. 2d 252, 255 (Fla. 3d DCA 1993) ("[W]hen a contract is terminable at will . . . . a competitor has a privilege of interference in order to acquire the business for himself. . . . If a competitor proves that the interference was lawful competition he will not be found to have committed the tort."); cf. Wackenhut Corp. v. Maimone, 389 So. 2d 656, 658 (Fla. 4th DCA 1980) ("Competition for business is not per se an actionable interference even though it is intentional.").

2. To defend using the competition privilege, a defendant must prove four distinct elements: (a) the relation concerns a matter involved in the competition between the defendant and the claimant; (b) the defendant does not employ an improper or wrongful means; (c) the defendant's action does not create or continue an unlawful restraint of trade; and (d) the defendant's purpose is at least in part to advance the defendant's interest in competing with the claimant. Weisman v. Southern Wine & Spirits of America, Inc., 297 So. 3d 646, 650 (Fla. 4th DCA 2020) (quoting RESTATEMENT (2D) OF TORTS § 768); accord Int'l Sales & Serv., Inc. v. Austral Insulated Products, Inc., 262 F.3d 1152, 1159 (11th

Cir. 2001). Whether the jury needs to be instructed on each of these four elements will depend on the circumstances of each case. In some cases, the court—either at the summary judgment or directed verdict stage—may determine as a matter of law that one or more of the elements has (or has not) been satisfied. If so, then the jury need not be instructed on that particular element. For these reasons, the committee has placed each of the four elements in brackets.

3. This instruction, by itself, may not be sufficient when the defense of competition is tried. Specifically, the trial court may need to instruct the jury further on the meaning of the elements of the defense. For example, the jury may need to be instructed on what is and is not an "improper" means; the court may want to consult the non-exhaustive list of improper means (physical violence,

misrepresentations, illegal conduct, and threats of illegal conduct) found in instruction 408.6. As another example, the court may need to consult authorities outside of these instructions to fashion a proper jury instruction on what is and is not an "unlawful restraint on trade."

62

## 408.8 AFFIRMATIVE DEFENSE — FINANCIAL INTEREST

Defendants have asserted that their conduct was justified because it occurred during the course of their efforts to protect their own financial interests in the business relationship with InnerWorkings. If you find that defendants' conduct was motivated, at least in part, by their own financial interest in the business relationship, [and that defendants did not use improper means to protect its financial interest, then defendants' conduct was justified.

NOTE ON USE FOR 408.8

To defend based on the privilege to protect one's own financial and contractual interests requires that the defendant show improper means were not employed. Weisman v. S. Wine & Spirits of Am., Inc., 297 So. 3d 646, 651 (Fla. 4th DCA 2020). See Security Title Guarantee Corp. of Baltimore v. McDill Columbus Corp., 543 So. 2d 852, 855 (Fla. 2d DCA 1989) ("The unchallengeable controlling principle is that 'so long as improper means are not employed, activities taken to safeguard or promote one's own financial . . . interests are entirely nonactionable.'" (quoting Ethyl Corp. v. Balter, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980)); Genet Co. v. Anheuser Busch, Inc., 498 So. 2d 683 (Fla. 3d DCA 1986) ("[T]here can be no claim where the action complained of is undertaken to safeguard or promote one's financial or economic interest."); see also Babson Bros. Co. v. Allison, 337 So. 2d 848, 850 (Fla. 1st DCA 1976) (discussing W. Prosser, LAW OF TORTS §129, 944–45 (4th ed. 1971)); Peacock v. General Motors Acceptance Corp., 432 So. 2d 142, 144 (Fla. 1st DCA 1983) ("GMAC's privilege to protect its contractual interests is not absolute but is instead conditioned upon its employing means that are not improper.").

(Adopted February 17, 2022.)

## 408.9 UNJUSTIFIED CONDUCT — MALICE

If you find that defendants' conduct was justified because defendants acted to protect or advance their own competitive or financial interest, then it is immaterial that defendants may also have received a personal benefit in interfering with InnerWorkings's relationship with employees or customers. If you find, however, that defendants' conduct was not directed to protecting or advancing defendants' competitive or financial interest but was directed solely to harm InnerWorkings, even if it also incidentally furthered their economic interests, then defendants' conduct was not justified.

NOTES ON USE FOR 408.9

1.     A defendant's privilege to interfere is not absolute. The defendant is divested of the privilege when the defendant "acts solely with ulterior purposes" and the advice to terminate is not in the best interest of the third party with whom the plaintiff has a business or contractual relationship. O.E. Smith's Sons, Inc. v. George, 545 So. 2d 298 (Fla. 1st DCA 1989); see McCurdy v. Collis., 508 So. 2d 380 (Fla. 1st DCA 1987) ("A qualified privilege to interfere is not negated by concomitant evidence of malice. It is only when malice is the sole basis for interference that it will be actionable."); Ethyl Corp. v. Balter, 386 So. 2d 1220, 1225-26 (Fla. 3rd DCA 1980) ("[S]ince . . . Ethyl acted in the lawful protection of its legitimate interests in receiving the money it was owed and not 'solely' out of malice, the personal feelings its employees may have had about Balter make no difference at all."); Heavener, Ogier Services, Inc. v. R.W. Florida Region, Inc., 418 So. 2d 1074, 1077 (Fla. 5th DCA 1982) ("However, there is an exception to this exception – referring to the financial interest privilege – even if the contract is terminable at will, the interferer's actions are tortious and actionable if the motive is purely malicious and not coupled with any legitimate competitive economic interest."). A defendant is not a stranger to a business relationship, and

64

thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed. Palm Beach Cty. Health Care Dist. v. Pro. Med. Educ., Inc., 13 So. 3d 1090, 1094 (Fla. 4th DCA. 2009).

2.    This instruction should be given when there is evidence that the interference was directed solely to harm the claimant.

(Adopted February 17, 2022.)

## UNFAIR OR DECEPTIVE ACTS OR PRACTICES: HAW. REV. STAT. §480-2

To prevail against defendants on the claim of unfair or deceptive acts or practices, InnerWorkings must prove all of the following elements:

InnerWorkings is a "consumer;" and

Defendants engaged in an act or practice that was unfair or deceptive; and

The unfair or deceptive act or practice occurred in the conduct of trade or commerce; and

The unfair or deceptive act or practice was a legal cause of damages to InnerWorkings.

Haw. Rev. Stat. §§ 480-1, 480-2(a), (d), & 480-13.

66

## CONSPIRACY INSTRUCTIONS

## CONSPIRACY

A defendant also may be found liable for any of the four violations, even if he personally did not do them, if you find that he conspired with someone who did them or caused them to be done. A conspiracy is an agreement of two or more persons to commit one or more wrongful acts. To prove the defendant liable for conspiring to commit any of the violations, the plaintiffs must prove by a preponderance of the evidence:

- First, two or more persons agreed to commit a wrongful act;

- Second, the defendant joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it;

- Third, one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy; and

- Fourth, the violation could reasonably have been foreseen to be a necessary or natural consequence of the conspiracy.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. Further,

67

the agreement, common plan, design, or purpose does not have to have been arranged or formulated in advance. The existence of such agreement, plan or purpose may be inferred from the fact that two or more persons acted together to put into effect a joint enterprise with a wrongful or criminal aim.

Each member of the conspiracy is liable for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a violation in furtherance of a conspiracy, the other members have also, under the law, committed the violation.

Authorities:

*Pinkerton v. United States*, 328 U.S. 640 (1946); *see also Barrueto v. Fernandez Larios*, 205 F. Supp. 2d 1325, 1331-33 (S.D. Fla. 2002); *Halberstam v. Welch*, 705 F.2d 472, 478-479 (D.C. Cir. 1983); *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994), *modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *United States v. Alvarez*, 755 F.2d 830, 847-851 (11th Cir. 1985); *Prosecutor v. Tadic*, Case No. IT-94-1-A, Judgement, (Appeals Chamber, July 15, 1999) ¶¶ 185-201, 227 (available at http://www.un.org/icty/tadic/appeal/judgement/index.htm); *Prosecutor v. Furundzija*, Case No. IT-95-17/1, Judgement (Appeals Chamber, July 21, 2000) ¶¶ 115-21 (available at http: //www.un.org/icty/furundzija/appeal/judgement/index.htm); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 24 F. Supp. 2d 289, 321-324 (S.D.N.Y. 2003).

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## AFFIRMATIVE DEFENSES

### 416.33 AFFIRMATIVE DEFENSE – EQUITABLE ESTOPPEL

Defendants have raised the defense of equitable estoppel.  To establish this defense, defendants must prove all of the following:

1.     InnerWorkings took action by failing to advise Horn, after she disclosed to an InnerWorkings executive prior to her departure from Innerworkings that she had accepted an operations position at Smart Source, that accepting the position would be a violation of any non-compete agreement.

Further, prior to her departure from Innerworkings, Horn asked for copies of any agreements between her and Innerworkings, and none was provided. Horn also requested copies of any agreements after she left InnerWorkings, but InnerWorkings continued to conceal them.

2.     Horn and Smart Source relied in good faith upon InnerWorkings's failure to provide any agreements containing restrictive covenants, effectively concealing that agreement from Horn and Smart Source; and

3.     Defendants' reliance on InnerWorkings's concealment caused Defendants to change their position for the worse.

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

NOTE ON USE FOR 416.33

The court should not give this instruction if it determines that the alleged action, words, inaction, or silence was not material.

SOURCES AND AUTHORITIES FOR 416.33

1.      "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." State v. Harris, 881 So.2d 1079, 1084 (Fla. 2004).


2.      "[I]n order to work an estoppel, silence must be under such circumstances that there are both a specific opportunity and a real apparent duty to speak." Thomas v. Dickinson, 30 So.2d 382, 384 (Fla. 1947).

3.   "The 'representation' upon which an estoppel may be predicated may consist of words, conduct, or, if there is a duty to speak, silence."  Lloyds Underwriters at London v. Keystone Equipment Finance Corp., 25 So.3d 89, 93 (Fla. 4th DCA 2009) (citations omitted).

4.   "The conduct ... such as to create an estoppel ... necessary to a waiver consists of willful or negligent words and admissions, or conduct, acts and acquiescence causing another to believe in a certain state of things by which such other person is or may be induced to act to his prejudice. The acts or conduct need not be positive, but can consist of failure to act or, more particularly, failure to speak when under some duty to speak." Richards v. Dodge, 150 So.2d 477, 481 (Fla. 2d DCA 1963) (internal citations omitted).

*ACTIVE 689227245v3*

WPBDOCS 20687847 1

## 416.30 AFFIRMATIVE DEFENSE – WAIVER

Horn claims that she was not bound by any restrictive covenants in alleged agreements with InnerWorkings because InnerWorkings gave up its right to have Horn perform those obligations. This is called a "waiver."

To establish this defense, Horn must prove all of the following:

1. InnerWorkings's right to have Horn comply with enforceable restrictive covenants actually existed;

2. InnerWorkings knew or should have known it had the right to have Horn be bound by enforceable restrictive covenants; and

3. InnerWorkings freely and intentionally gave up its right to have Horn be bound by enforceable restrictive covenants.

A waiver may be oral or written or may arise from conduct which shows that InnerWorkings gave up that right.

If Horn proves that InnerWorkings gave up its right to have Horn be bound by enforceable restrictive covenants, then Horn was not required to abide by them.

## SOURCES AND AUTHORITIES FOR 416.30

1. "Waiver" is the voluntary and intentional relinquishment of a known right. *RAYMOND JAMES FIN. SERVS., INC. V. SALDUKAS*, 896 SO.2D 707, 711 (FLA.

71

2005); *Bueno v. Workman*, 20 So.3d 993, 998 (Fla. 4th DCA 2009); *Winans v. Weber*, 979 So.2d 269, 274 (Fla. 2d DCA 2007).

2.   The elements necessary to establish waiver are:  the existence of a right, privilege, or advantage; the actual or constructive knowledge thereof; and an intention to relinquish that right, privilege, or advantage.  *Bueno v. Workman*, 20 So.3d 993, 998 (Fla. 4th DCA 2009); *Winans v. Weber*, 979 So.2d 269, 274 (Fla. 2d DCA 2007).

3.   There can be no waiver if the party against whom the waiver is invoked did not know all of the material facts, or was misled about the material facts.  *Winans v. Weber*, 979 So.2d 269, 274 (Fla. 2d DCA 2007); *L.R. V. DEP'T OF CHILDREN & FAMILIES, 822 SO.2D 527, 530 (FLA. 4TH DCA 2002)*.

4.   Proof of the elements of waiver may be express or implied from conduct or acts that lead a party to believe a right has been waived.  *RAYMOND JAMES FIN. SERVS., INC. V. SALDUKAS, 896 SO.2D 707, 711 (FLA. 2005)*; *LENEVE V. VIA S. FLA., L.L.C., 908 SO.2D 530, 535 (FLA. 4TH DCA 2005)*.

72

## 504.9 MITIGATION OF DAMAGES

If Horn breached the contract and the breach caused damages, InnerWorkings is not entitled to recover for those damages which Horn proves InnerWorkings could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of InnerWorkings's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue burden.

If InnerWorkings made reasonable efforts to avoid the damages caused by the breach, then your award should include reasonable amounts that it spent for this purpose.

NOTE ON USE FOR 504.9

This instruction is intended primarily for use in exclusive contract cases when the defense of mitigation of damages has been asserted, as non-exclusive contracts are generally considered an exception to the doctrine of avoidable consequences. *See Graphic Assocs., Inc. v. Riviana Rest. Corp.*, 461 So.2d 1011, 1014 (Fla. 4th DCA 1984); Calimari and Perillo, THE LAW OF CONTRACTS § 14-16. This instruction does not use the somewhat inaccurate term "duty to mitigate" damages because "[t]here is no actual 'duty to mitigate,' because the injured party is not compelled to undertake any ameliorative efforts." *Sys. Components Corp. v. Fla. Dep't of Transp.*, 14 So.3d 967, 982 (Fla. 2009).

SOURCES AND AUTHORITIES FOR 504.9

1. *Sys. Components Corp. v. Fla. Dep't of Transp.*, 14 So.3d 967, 982 (Fla. 2009) ("The doctrine of avoidable consequences … commonly applies in contract and

73

tort actions. … The doctrine does not permit damage reduction based on what 'could have been avoided' through Herculean efforts. Rather, the injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through 'ordinary and reasonable care' without requiring undue effort or expense.") (internal citations omitted).

2. *Graphic Associates, Inc. v. Riviana Rest. Corp.*, 461 So.2d 1011, 1014 (Fla. 4th DCA 1984) ("The doctrine of avoidable consequences, commonly referred to as a duty to mitigate damages, prevents a party from recovering those damages inflicted by a wrongdoer which the injured party 'could have avoided without undue risk, burden, or humiliation.'") (citation omitted).

3. RESTATEMENT (SECOND) OF CONTRACTS § 350 (1981) ("(1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation. (2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss.").

*ACTIVE 689227245v3*

WPBDOCS 20687847 1