UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| INNERWORKINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 8:21-CV-00903-SDM-AEP |
| v. | ) | |
| | ) | |
| SARA HORN and SMART SOURCE, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>VERDICT FORM</u>**

We, the jury, find as to:

**<u>COUNT I– DEFEND TRADE SECRETS ACT OF 2016 & COUNT II
HAWAI'I UNIFORM TRADE SECRETS ACT
(AGAINST SMART SOURCE AND SARA HORN)</u>**

**1.**    Has InnerWorkings proven in the evidence that its "Transactional Projects" information satisfies the elements to be considered a trade secret?

   i. Yes:_____          No:_____

**2.**    Has InnerWorkings proven in the evidence that it maintained the secrecy of its "Transactional Projects" so that it was protected information?

   i. Yes:_____          No:_____

**3.** Has InnerWorkings proven in the evidence that its "Transactional Projects" information was improperly acquired by Smart Source and Ms. Horn?

    i.  Yes:_____          No:_____

**4.** Has InnerWorkings proven in the evidence that its "Transactional Projects" information was used by Smart Source and Ms. Horn?

    i.  Yes:_____          No:_____

**5.** Has InnerWorkings proven in the evidence that its "Transactional Projects" information was disclosed by Smart Source and Sara Horn?

    i.  Yes:_____          No:_____

If you answered "NO" to any of the above questions regarding "Transactional Projects" information, please skip to Number 10.

**6.** If you answered "YES" to any of the above questions, did the misappropriation of "Transactional Projects" first occur prior to February 14, 2020?

    i.  Yes:_____          No:_____

**7.** Has InnerWorkings proven from the evidence that Smart Source and Sara Horn acted willfully and maliciously in misappropriating its "Transactional Projects"? If "Yes" is your verdict, then please state the dollar amount of any exemplary damages proven from the evidence that you award.

    i.  Yes:_____          No:_____

    b.  If you answer "Yes," in what amount?    $_____

**8.**    Has InnerWorkings proven from evidence that its "Warehouse Inventory Report" satisfies the elements to be considered a trade secret?

    i.   Yes:_____          No:_____

**9.**    Has InnerWorkings proven from the evidence that it maintained the secrecy of its "Warehouse Inventory Report" so that it was protected information?

    i.   Yes:_____          No:_____

**10.**   Has InnerWorkings proven from the evidence that its "Warehouse Inventory Report" was improperly acquired by Smart Source and Sara Horn?

    i.   Yes:_____          No:_____

**11.**   Has InnerWorkings proven from evidence that its "Warehouse Inventory Report" was used by Smart Source and Sara Horn?

    i.   Yes:_____          No:_____

**12.**   Has InnerWorkings proven from evidence that its "Warehouse Inventory Report" was disclosed by Smart Source and Sara Horn?

    i.   Yes:_____          No:_____

If you answered "NO" to any of the above questions regarding "Warehouse Inventory Report", please skip to Number 19.

**13.**   If you answered "YES" to any of the above questions, did the misappropriation of "Warehouse Inventory Report" first occur prior to February 14, 2020?

ii. Yes:_____          No:_____

14. Has InnerWorkings proven from the evidence that its business was "completely destroyed" by defendants' misappropriation of its "Warehouse Inventory Report"? If "Yes is your verdict," only then please state the dollar amount of any actual damages you award.

    i. Yes:_____          No:_____

b. If you answer "Yes," what amount do your award?

$_____

15. Has InnerWorkings proven from the evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes is your verdict," state the dollar amount of the market value damages you award.

    i. Yes:_____          No:_____

b. If you answer "Yes," in what amount?     $_____

16. Has InnerWorkings proven from the evidence that Smart Source and Sara Horn acted willfully and maliciously in misappropriating its "Warehouse Inventory Report"? If "Yes," state the dollar amount of any exemplary damages proven in evidence that you award.

    i. Yes:_____          No:_____

b. If you answer "Yes," in what amount?     $_____

17. Has InnerWorkings proven that from the evidence that it's "changes to employee compensation" satisfies the elements to be considered a trade secret?

    i. Yes:_____          No:_____

18. Has InnerWorkings proven from the evidence that it maintained the secrecy of its "changes to employee compensation" so that it was protected information?

     i.  Yes:_____        No:_____

19. Has InnerWorkings proven from the evidence that its "changes to employee compensation" was improperly acquired by Smart Source and Sara Horn?

     i.  Yes:_____        No:_____

20. Has InnerWorkings proven from the evidence that its "changes to employee compensation" was used by Smart Source and Sara Horn?

     i.  Yes:_____        No:_____

21. Has InnerWorkings proven from the evidence that its "changes to employee compensation" was disclosed by Smart Source and Sara Horn?

     i.  Yes:_____        No:_____

If you answered "NO" to any of the above questions regarding "changes to employee compensation", please skip numbers 24-27.

## DAMAGES

1. If you answered "YES" to any of the above questions, does the evidence show that the misappropriation of "changes to employee compensation" first occur prior to February 14, 2020?

     iii.  Yes:_____        No:_____

2. Has InnerWorkings proven from the evidence that its business was "completely destroyed" by defendants' misappropriation of its "changes

to employee compensation"? If "Yes," state the dollar amount of the market value damages proven from the evidence that you award.

a. Yes:_____          No:_____

b.  If you answer "Yes," in what amount?          $_____

**3.**     Has InnerWorkings proven from the evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven from the evidence that you award.

a. Yes:_____          No:_____

b.  If you answer "Yes," in what amount?          $_____

**4.**     Has InnerWorkings proven from the evidence that Smart Source and Sara Horn acted willfully and maliciously in misappropriating its "changes to employee compensation"? If "Yes," state the dollar amount of any exemplary damages proven from evidence that you award.

a. Yes:_____          No:_____

b.  If you answer "Yes," in what amount?          $_____

DEFENSES

**1.**     Have Smart Source and Ms. Horn proven from the evidence that InnerWorkings' Transactional Projects are widely known and in the public domain?

i.  Yes:_____          No:_____

**2.**     Have Smart Source and Ms. Horn proven from evidence that InnerWorkings' Warehouse Inventory Report are widely known and in the public domain?

i.  Yes:_____          No:_____

3.      Have Smart Source and Ms. Horn proven from evidence that InnerWorkings' changes to employee compensation are widely known and in the public domain?

i.  Yes:_____          No:_____

4.  Have Smart Source and Ms. Horn proven from evidence that InnerWorkings acted with unclean hands?

i.  Yes:_____          No:_____

5.  Have Smart Source and Ms. Horn proven from evidence that their conduct was protected by the privilege of lawful competition?

i.  Yes:_____          No:_____

6.  Have Smart Source and Ms. Horn proven from evidence that InnerWorkings failed to make reasonable efforts to mitigate its damages?

i.  Yes:_____          No:_____

7.  Have Smart Source and Ms. Horn proven from evidence that InnerWorkings improperly concealed from Horn and/or Smart Source the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement, despite requests by Smart Source for copies of such Agreements?

i.  Yes:_____          No:_____

8.  Have Smart Source and Ms. Horn proven from evidence that InnerWorkings waived, or is otherwise estopped from enforcing, any claim

related to the alleged contracts and alleged restrictive covenants as a result of InnerWorkings' selective enforcement of those restrictive covenants?

    i.  Yes:_____          No:_____

**9.** Have Smart Source and Ms. Horn proven from evidence that InnerWorkings waived or is otherwise estopped or prevented from enforcing any claim related to the alleged contracts and alleged restrictive covenants claimed by InnerWorkings as a result of InnerWorkings' knowledge that Horn accepted an operations position at Smart Source?

    i.  Yes:_____          No:_____

If you answered "YES" to any of the above questions regarding violations of the DTSA and HTSA, you must return a verdict of no liability as to defendants.

SOURCES

A claim for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"), and the Hawaii Uniform Trade Secrets Act, HRS ch. 482B ("HUTSA"), requires: (1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means. *WHIC LLC v. NextGen Lab'ys, Inc.,* 341 F. Supp. 3d 1147, 1161 (D. Haw. 2018) ("the analysis is essentially the same under either regime [DTSA and HUTSA]").

## COUNT III – BREACH OF CONTRACT - CONFIDENTIALITY
## (AGAINST SARA HORN)

1. Has InnerWorkings authenticated or introduced the alleged document or contract that forms the basis of its contractual claims?

   i.  Yes:_____          No:_____

2. Has InnerWorkings proven from the evidence that an enforceable contract existed between InnerWorkings and Horn in the form of the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement that included restrictive covenants?

   i.  Yes:_____          No:_____

3. Has InnerWorkings proven from the evidence the content of the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement that Horn accepted?

   i.  Yes:_____          No:_____

4. Has InnerWorkings proven from the evidence that the Agreements were ancillary to a valid transaction?

   i.  Yes:_____          No:_____

5. Has InnerWorkings proven from the evidence that the Agreements were supported by consideration?

   i.  Yes:_____          No:_____

6. Has InnerWorkings proven from its evidence that the restrictive covenants in the Agreements contain reasonable restraints?

   i.  Yes:_____           No:_____

7. Has InnerWorkings proven from its evidence that the restrictive covenants in the Agreements are no greater than is required for the protection of a legitimate business interest of InnerWorkings?

   i.  Yes:_____           No:_____

8. Has InnerWorkings proven with evidence that the restrictive covenants in the Agreements do not impose undue hardship on Ms. Horn?

   i.  Yes:_____           No:_____

9. Has InnerWorkings proven with evidence that the restrictive covenants in the Agreements are not injurious to the public?

   i.  Yes:_____           No:_____

10. Has Innerworkings proven with evidence that Sara Horn violated the terms of the confidentiality covenant by using and disclosing InnerWorkings' confidential information after her relationship with InnerWorkings terminated?

   i.  Yes:_____           No:_____

<u>DAMAGES</u>

**1.** Has InnerWorkings proven from evidence that its business was "completely destroyed" by Ms. Horn's breach of the confidentiality covenant in the Agreements?

    i.  Yes:_____        No:_____

**2.** Has InnerWorkings proven with evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven in the evidence that you award.

    i.  Yes:_____        No:_____

    b.  If you answer "Yes," in what amount?    $_____

<u>DEFENSES</u>

1. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings has unclean hands as a result of concealing from Horn its attempts to bind her to a confidentiality restrictive covenant?

    i.  Yes:_____        No:_____

2. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings improperly concealed from Horn and/or Smart Source the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement, despite requests for copies?

    i.  Yes:_____        No:_____

3. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings waived, or is otherwise estopped or prevented from enforcing, any claim related to the confidentiality covenant as a result of InnerWorkings's selective enforcement of the confidentiality covenant?

i. Yes:_____          No:_____

4.  Have Smart Source and Ms. Horn proven with evidence that InnerWorkings failed to make reasonable efforts to mitigate its damages?

i. Yes:_____          No:_____

5.  Have Smart Source and Ms. Horn proven with evidence that InnerWorkings waived, or is otherwise estopped or prevented from enforcing, any claim related to the alleged contracts and alleged restrictive covenants as a result of InnerWorkings's knowledge that Horn accepted an operations position at Smart Source?

a.  Yes:____          No:_____

If you answered "YES" to any of the above questions regarding the alleged breach of contract by Ms. Horn, you must return a verdict in favor of Ms. Horn on these counts.

## SOURCES

"Under Illinois law, '[t]he elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.'" Cox v. Calumet Pub. Sch. Dist. 132, 180 F. Supp. 3d 556, 562 (N.D. Ill. 2016) (quoting  Avila v. CitiMortgage, Inc., 801 F.3d 777, 786 (7th Cir.2015) (citing W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill.App.3d 752, 759, 286 Ill.Dec. 734, 814 N.E.2d 960 (1st Dist.2004)).

"Illinois law enforces restrictive covenants only where: (1) ancillary to a valid transaction (here, the employment contract); (2) supported by consideration; and (3) containing reasonable restraints." *Dressander v. Simplicity Financial Marketing, Inc.*, 2023 WL 2561733, at *10 (N.D. Ill. Mar. 17, 2023).  "Illinois courts will find a restraint on trade reasonable if it: (1) is 'no greater than is required for the protection of a legitimate business interest of the employer-promisee'; (2) 'does not

impose undue hardship on the employee'; and (3) is 'not injurious to the public.'"
*Id.* (quoting *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396–97 (Ill. 2011)).

## COUNT IV – BREACH OF CONTRACT – NON-COMPETITION
## (AGAINST SARA HORN)

1. Has InnerWorkings authenticated or introduced the alleged document or contract that forms the basis of its contractual claims?

    i.  Yes:_____        No:_____

2. Has InnerWorkings proven from the evidence that an enforceable contract existed between InnerWorkings and Horn in the form of the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement that included restrictive covenants?

    i.  Yes:_____        No:_____

3. Has InnerWorkings proven from the evidence the content of the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement that Horn accepted?

    i.  Yes:_____        No:_____

4. Has InnerWorkings proven from the evidence that the Agreements were ancillary to a valid transaction?

    i.  Yes:_____        No:_____

5. Has InnerWorkings proven from the evidence that the Agreements were supported by consideration?

    i.  Yes:_____        No:_____

6. Has InnerWorkings proven from its evidence that the restrictive covenants in the Agreements contain reasonable restraints?

    i.  Yes:_____        No:_____

7. Has InnerWorkings proven from its evidence that the restrictive covenants in the Agreements are no greater than is required for the protection of a legitimate business interest of InnerWorkings?

i.  Yes:_____          No:_____

8.  Has InnerWorkings proven with evidence that the restrictive covenants in the Agreements do not impose undue hardship on Ms. Horn?

i.  Yes:_____          No:_____

9.  Has InnerWorkings proven with evidence that the restrictive covenants in the Agreements are not injurious to the public?

i.  Yes:_____          No:_____

10. Has Innerworkings proven with evidence that Sara Horn violated the terms of the non-competition covenant?

i.  Yes:_____          No:_____

## DAMAGES

**1.** Has InnerWorkings proven from evidence that its business was "completely destroyed" by Ms. Horn's breach of the non-competition covenant in the Agreements?
i.  Yes:_____          No:_____

**2.** Has InnerWorkings proven with evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven in the evidence that you award.

1.  Yes:_____          No:_____
2.  If you answer "Yes," in what amount?  $_____

## DEFENSES

1.  Have Smart Source and Ms. Horn proven with evidence that InnerWorkings has unclean hands as a result of concealing from Horn its attempts to bind her to a non-competition covenant?

ii. Yes:_____          No:_____

2. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings improperly concealed from Horn and/or Smart Source the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement, despite requests for copies?

ii. Yes:_____          No:_____

3. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings waived, or is otherwise estopped or prevented from enforcing, any claim related to the non-competition covenant as a result of InnerWorkings' selective enforcement of the non-competition covenant?

ii. Yes:_____          No:_____

4. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings failed to make reasonable efforts to mitigate its damages?

i. Yes:_____          No:_____

5. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings waived, or is otherwise estopped or prevented from enforcing, any claim related to the alleged contracts and alleged non-competition covenant as a result of InnerWorkings' knowledge that Horn accepted an operations position at Smart Source?

a. Yes:___          No:_____

If you answered "YES" to any of the above questions regarding the alleged breach of contract by Ms. Horn, you must return a verdict in favor of Ms. Horn on these counts.

SOURCES

"Under Illinois law, '[t]he elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.'" Cox v. Calumet Pub. Sch. Dist. 132, 180 F. Supp. 3d 556, 562 (N.D. Ill. 2016) (quoting Avila v. CitiMortgage, Inc., 801 F.3d 777, 786 (7th Cir.2015) (citing

W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill.App.3d 752, 759, 286 Ill.Dec. 734, 814 N.E.2d 960 (1st Dist.2004)).

"Illinois law enforces restrictive covenants only where: (1) ancillary to a valid transaction (here, the employment contract); (2) supported by consideration; and (3) containing reasonable restraints." *Dressander v. Simplicity Financial Marketing, Inc.*, 2023 WL 2561733, at *10 (N.D. Ill. Mar. 17, 2023). "Illinois courts will find a restraint on trade reasonable if it: (1) is 'no greater than is required for the protection of a legitimate business interest of the employer-promisee'; (2) 'does not impose undue hardship on the employee'; and (3) is 'not injurious to the public.'" *Id.* (quoting *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396–97 (Ill. 2011)).

## <u>COUNT V – BREACH OF CONTRACT – NON-SOLICITATION OF CUSTOMERS</u>

### (AGAINST SARA HORN)

1. Has InnerWorkings authenticated or introduced the alleged document or contract that forms the basis of its contractual claims?

       i.  Yes:_____        No:_____

2. Has InnerWorkings proven from the evidence that an enforceable contract existed between InnerWorkings and Horn in the form of the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement that included restrictive covenants?

       i.  Yes:_____        No:_____

3. Has InnerWorkings proven from the evidence the content of the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement that Horn accepted?

       i.  Yes:_____        No:_____

4. Has InnerWorkings proven from the evidence that the Agreements were ancillary to a valid transaction?

       i.  Yes:_____        No:_____

5. Has InnerWorkings proven from the evidence that the Agreements were supported by consideration?

       i.  Yes:_____        No:_____

6. Has InnerWorkings proven from its evidence that the restrictive covenants in the Agreements contain reasonable restraints?

       i.  Yes:_____        No:_____

7. Has InnerWorkings proven from its evidence that the restrictive covenants in the Agreements are no greater than is required for the protection of a legitimate business interest of InnerWorkings?

i.  Yes:_____          No:_____

8.  Has InnerWorkings proven with evidence that the restrictive covenants in the Agreements do not impose undue hardship on Ms. Horn?

i.  Yes:_____          No:_____

9.  Has InnerWorkings proven with evidence that the restrictive covenants in the Agreements are not injurious to the public?

i.  Yes:_____          No:_____

10. Has Innerworkings proven with evidence that Sara Horn violated the terms of the non-solicitation of customers covenant?

i.  Yes:_____          No:_____

## DAMAGES

**1.**  Has InnerWorkings proven from evidence that its business was "completely destroyed" by Ms. Horn's breach of the non-solicitation of customers covenant in the Agreements?

i.  Yes:_____          No:_____

**2.**  Has InnerWorkings proven with evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven in the evidence that you award.

i.  Yes:_____          No:_____

ii.  If you answer "Yes," in what amount?  $_____

## DEFENSES

1. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings has unclean hands as a result of concealing from Horn its attempts to bind her to a non-solicitation of customers covenant?

     i.  Yes:_____          No:_____

2. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings improperly concealed from Horn and/or Smart Source the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement, despite requests for copies?

     i.  Yes:_____          No:_____

3. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings waived, or is otherwise estopped or prevented from enforcing, any claim related to the non-solicitation of customers covenant as a result of InnerWorkings' selective enforcement of the non-solicitation of customers covenant?

     i.  Yes:_____          No:_____

4. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings failed to make reasonable efforts to mitigate its damages?

     i.  Yes:_____          No:_____

5. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings waived, or is otherwise estopped or prevented from enforcing, any claim related to the alleged contracts and alleged non-solicitation of customers covenant as a result of InnerWorkings's knowledge that Horn accepted an operations position at Smart Source?

     i.  Yes:_____          No:_____

If you answered "YES" to any of the above questions regarding the alleged breach of contract by Ms. Horn, you must return a verdict in favor of Ms. Horn on these counts.

<u>SOURCES</u>

"Under Illinois law, '[t]he elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.'" Cox v. Calumet Pub. Sch. Dist. 132, 180 F. Supp. 3d 556, 562 (N.D. Ill. 2016) (quoting Avila v. CitiMortgage, Inc., 801 F.3d 777, 786 (7th Cir.2015) (citing W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill.App.3d 752, 759, 286 Ill.Dec. 734, 814 N.E.2d 960 (1st Dist.2004)).

"Illinois law enforces restrictive covenants only where: (1) ancillary to a valid transaction (here, the employment contract); (2) supported by consideration; and (3) containing reasonable restraints." *Dressander v. Simplicity Financial Marketing, Inc.*, 2023 WL 2561733, at *10 (N.D. Ill. Mar. 17, 2023). "Illinois courts will find a restraint on trade reasonable if it: (1) is 'no greater than is required for the protection of a legitimate business interest of the employer-promisee'; (2) 'does not impose undue hardship on the employee'; and (3) is 'not injurious to the public.'" *Id.* (quoting *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396–97 (Ill. 2011)).

## COUNT VI – BREACH OF CONTRACT – NON-SOLICITATION OF EMPLOYEES

### (AGAINST SARA HORN)

1. Has InnerWorkings authenticated or introduced the alleged document or contract that forms the basis of its contractual claims?

     i.  Yes:_____          No:_____

2. Has InnerWorkings proven from the evidence that an enforceable contract existed between InnerWorkings and Horn in the form of the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement that included restrictive covenants?

     i.  Yes:_____          No:_____

3. Has InnerWorkings proven from the evidence the content of the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement that Horn accepted?

     i.  Yes:_____          No:_____

4. Has InnerWorkings proven from the evidence that the Agreements were ancillary to a valid transaction?

     i.  Yes:_____          No:_____

5. Has InnerWorkings proven from the evidence that the Agreements were supported by consideration?

     i.  Yes:_____          No:_____

6. Has InnerWorkings proven from its evidence that the restrictive covenants in the Agreements contain reasonable restraints?

     i.  Yes:_____          No:_____

7. Has InnerWorkings proven from its evidence that the restrictive covenants in the Agreements are no greater than is required for the protection of a legitimate business interest of InnerWorkings?

    i.  Yes:_____            No:_____

8. Has InnerWorkings proven with evidence that the restrictive covenants in the Agreements do not impose undue hardship on Ms. Horn?

    i.  Yes:_____            No:_____

9. Has InnerWorkings proven with evidence that the restrictive covenants in the Agreements are not injurious to the public?

    i.  Yes:_____            No:_____

10. Has Innerworkings proven with evidence that Sara Horn violated the terms of the non-solicitation of employees covenant?

    i.  Yes:_____            No:_____

## DAMAGES

1. Has InnerWorkings proven from evidence that its business was "completely destroyed" by Ms. Horn's breach of the non-solicitation of employees covenant in the Agreements?

    i.  Yes:_____            No:_____

2. Has InnerWorkings proven with evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven in the evidence that you award.

    i.    Yes:_____            No:_____

    ii.    If you answer "Yes," in what amount? $_____

## DEFENSES

1. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings has unclean hands as a result of concealing from Horn its attempts to bind her to a non-solicitation of employees covenant?

      i.  Yes:_____         No:_____

2. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings improperly concealed from Horn and/or Smart Source the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement, despite requests for copies?

      i.  Yes:_____         No:_____

3. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings waived, or is otherwise estopped or prevented from enforcing, any claim related to the non-solicitation of employees covenant as a result of InnerWorkings's selective enforcement of the non-solicitation of employees covenant?

      i.  Yes:_____         No:_____

4. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings failed to make reasonable efforts to mitigate its damages?

      i.  Yes:_____         No:_____

5. Have Smart Source and Ms. Horn proven with evidence that InnerWorkings waived, or is otherwise estopped or prevented from enforcing, any claim related to the alleged contracts and alleged non-solicitation of employees covenant as a result of InnerWorkings's knowledge that Horn accepted an operations position at Smart Source?

      i.  Yes:_____         No:_____

If you answered "YES" to any of the above questions regarding the alleged breach of contract by Ms. Horn, you must return a verdict in favor of Ms. Horn on these counts.

## SOURCES

"Under Illinois law, '[t]he elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.'" Cox v. Calumet Pub. Sch. Dist. 132, 180 F. Supp. 3d 556, 562 (N.D. Ill. 2016) (quoting Avila v. CitiMortgage, Inc., 801 F.3d 777, 786 (7th Cir.2015) (citing

W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill.App.3d 752, 759, 286 Ill.Dec. 734, 814 N.E.2d 960 (1st Dist.2004)).

"Illinois law enforces restrictive covenants only where: (1) ancillary to a valid transaction (here, the employment contract); (2) supported by consideration; and (3) containing reasonable restraints." *Dressander v. Simplicity Financial Marketing, Inc.*, 2023 WL 2561733, at *10 (N.D. Ill. Mar. 17, 2023). "Illinois courts will find a restraint on trade reasonable if it: (1) is 'no greater than is required for the protection of a legitimate business interest of the employer-promisee'; (2) 'does not impose undue hardship on the employee'; and (3) is 'not injurious to the public.'" *Id.* (quoting *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396–97 (Ill. 2011)).

## COUNT VII – AIDING & ABETTING BREACH OF FIDUCIARY DUTY
### (AGAINST HORN AND SMART SOURCE)

1. Has InnerWorkings proven with evidence that Ray Evans owed a fiduciary duty to InnerWorkings during his employment with InnerWorkings?

    i. Yes:_____        No:_____

2. Has InnerWorkings proven with evidence that Ray Evans violated his fiduciary duty under Hawaii law?

    i. Yes:_____        No:_____

3. Has InnerWorkings proven with evidence that Smart Source and Sara Horn knew that Evans' conduct constituted a breach of his fiduciary duty to InnerWorkings?

    i. Yes:_____        No:_____

6. Has InnerWorkings proven with evidence that Smart Source and Sara Horn knowingly participated in Evans's breach of his fiduciary duty by encouraging and substantially assisting Evans's breach of his fiduciary duty?

    i. Yes:_____        No:_____

7. Has InnerWorkings proven with evidence that Smart Source and Sara Horn gave substantial assistance or encouragement to Evans to so act?

    i. Yes:_____        No:_____

## DAMAGES

1. Has InnerWorkings proven with evidence that its business was "completely destroyed" by Smart Source's and Ms. Horn's aiding and abetting Evans'

breach of his fiduciary duty to InnerWorkings?

    i.  Yes:_____          No:_____

**2.**    Has InnerWorkings proven evidence of the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven from the evidence that you award.

    i.  Yes:_____          No:_____

    b.  If you answer "Yes," in what amount?      $_____

## DEFENSES

1.  Have Smart Source and Ms. Horn proven with evidence that InnerWorkings failed to make reasonable efforts to mitigate its damages?

    i.  Yes:_____          No:_____

## SOURCES

David Sansone Co., Inc. v. Waiaha Ridge LLC, 2022 WL 1212922, at *4 (D. Haw. Apr. 25, 2022).

## COUNT VIII – TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS
### (AGAINST HORN AND SMART SOURCE)

1. Has InnerWorkings proven with evidence that it had business relationships with identifiable customer(s)?

   i.  Yes:_____          No:_____

2. Has InnerWorkings proven with evidence that Smart Source and Ms. Horn knew that InnerWorkings had a business relationship with the identifiable customer(s)?

   i.  Yes:_____          No:_____

3. Has InnerWorkings proven that any identifiable customer(s) ceased working with InnerWorkings because of Smart Source and Horn's conduct?

   a.  Yes:_____          No:_____

4. Identify each customer relationships you find that InnerWorkings has proven was interfered with by Smart Source and Horn.

   _____          _____

   _____          _____

   _____          _____

5. Has InnerWorkings proven from evidence that the identifiable customer(s) would have continued with the business relationship had Smart Source and Ms. Horn not interfered with it?

   a.  Yes:_____          No:_____

6. Has InnerWorkings proven with evidence that Smart Source and Ms. Horn acted unjustifiably in its interference with InnerWorkings' business relationship with identifiable customer(s)?

a. Yes:_____          No:_____

7. Has Innerworkings proven with evidence that it suffered damages as a direct result of the interference?

a. Yes:_____          No:_____

8. Has InnerWorkings proven from the evidence that it had business relationships with identifiable employees?

a. Yes:___          No:_____

9. Has InnerWorkings proven from evidence that Smart Source and Ms. Horn knew that InnerWorkings had business relationships with the identifiable employees?

a. Yes:_____          No:_____

10. Has InnerWorkings proven that any employee ceased working for InnerWorkings because of Smart Source and Ms. Horn's conduct?

a. Yes:_____          No:_____

11. Identify each employee relationship you find that InnerWorkings has proven was interfered with by Smart Source and Horn.

_____          _____

_____          _____

_____          _____

12. Has InnerWorkings proven from evidence that the identifiable employees would have continued with the business relationship had Smart Source and Ms. Horn not interfered with it?

a. Yes:_____          No:_____

13. Has InnerWorkings proven from the evidence that Smart Source and Ms. Horn acted unjustifiably in its interference with InnerWorkings' business relationship with identifiable employees?

a. Yes:_____          No:_____

14. Has Innerworkings proven from its evidence that it suffered damages proven in the evidence as a direct result of the interference?

a.     Yes:_____          No:_____

15. Has InnerWorkings proven from its evidence that its business located in Hawaii was "completely destroyed" as of February 14, 2020?

a.     Yes:_____          No:_____

## DAMAGES

**1.** Has InnerWorkings proven from the evidence that its business was "completely destroyed" by Smart Source's and Ms. Horn's tortious interference with its existing and prospective business relationships?

i. Yes:_____          No:_____

**2.**     Has InnerWorkings proven with evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven in the evidence by InnerWorkings that you award.

i. Yes:_____          No:_____

b. If you answer "Yes," in what amount?        $_____

<u>DEFENSES</u>

1.  Have Smart Source and Ms. Horn proven evidence that their conduct did not legally and proximately caused damage to InnerWorkings?

    i. Yes:_____          No:_____

2.  Have Smart Source and Ms. Horn proven evidence that InnerWorkings waived, or is otherwise estopped from enforcing, any claim related to the non-competition covenant in light of InnerWorkings's knowledge that Horn accepted an operations position at Smart Source?

    i. Yes:_____          No:_____

3.  Have Smart Source and Ms. Horn proven with its evidence that InnerWorkings waived, or is otherwise estopped from enforcing, any claim related to the non-competition covenant as a result of InnerWorkings's selective enforcement of the restrictive covenant?

    i. Yes:_____          No:_____

4.  Have Smart Source and Ms. Horn proven with evidence that InnerWorkings has unclean hands as a result of concealing from Horn its attempts to bind her to a non-competition restrictive covenant?

    i. Yes:_____          No:_____

5.  Have Smart Source and Ms. Horn proven with evidence that InnerWorkings improperly concealed from Horn and/or Smart Source the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement, despite requests for copies?

    i. Yes:_____          No:_____

6.  Have Smart Source and Ms. Horn proven with evidence that the 2018 Restricted Stock Unit Award Agreement and the 2018 Stock Option Agreement constitute an unlawful restraint on trade?

SOURCES

    a.  Florida

        i.  To establish a tortious interference claim, IW must prove: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Martin Petroleum Corp. v. Amerada Hess Corp.*, 769 So. 2d 1105, 1107 (Fla. 4th DCA 2000).

    b.  Hawaii

        i.  To establish tortious interference with existing and prospective business relationships under Hawaii law, the plaintiff must show: "(1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages." *Ace Quality Farm Prod., LLC v. Hanh*, 136 Haw. 373, 362 P.3d 806 (Haw. Ct. App. 2015).

## **COUNT IX – TORTIOUS INTERFERENCE WITH CONTRACT (AGAINST SMART SOURCE)**

1.    Has InnerWorkings proven with evidence that an enforceable contract existed between InnerWorkings and Sara Horn?

        i.  Yes:_____            No:_____

2.      Has InnerWorkings proven with evidence that Smart Source knew that contract existed?

        i.  Yes:_____            No:_____

3.      Has InnerWorkings proven evidence that Smart Source intentionally committed acts designed to cause Sara Horn to breach her contractual obligations to InnerWorkings?

        i.  Yes:_____            No:_____

4.      Has InnerWorkings proven evidence that it suffered damages as a direct result of the interference?

        i.  Yes:_____            No:_____

## DAMAGES

**1.**  Has InnerWorkings proven evidence that its business was "completely destroyed" by Smart Source's tortious interference with its contract with Ms. Horn?

        i.  Yes:_____            No:_____

**2.**      Has InnerWorkings proven the evidence of the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven by InnerWorkings from evidence you award.

        i.  Yes:_____            No:_____

        b.  If you answer "Yes," in what amount?      $_____

DEFENSES

1. Have Smart Source and Ms. Horn proven evidence that they did not legally and proximately caused damage to InnerWorkings?

    i. Yes:_____            No:_____

## <u>COUNT  X  –  UNFAIR COMPETITION UNDER HRS § 480-2</u>
## <u>(AGAINST SMART SOURCE)</u>

1.    Has InnerWorkings proven with evidence that Smart Source engaged in a deceptive act or unfair trade practice?

      i.    Yes:_____          No:_____

2.    Has InnerWorkings proven with evidence that Smart Source's deceptive acts or unfair trade practices caused damage to InnerWorkings?

      i.    Yes: _____         No: _____


## <u>DAMAGES</u>


1.    Do you find by a preponderance of the evidence proven by InnerWorkings that InnerWorkings suffered actual damages resulting from Smart Source's deceptive act or unfair trade practice?

      i.    Yes: _____         No: _____

2.    Has InnerWorkings proven with evidence that its business was "completely destroyed" by Smart Source's unfair competition under HRS § 480-2?

      i.  Yes:_____         No:_____

3.    Has InnerWorkings proven with evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven from the evidence that you award.

      a.  Yes:_____         No:_____

      b.  If you answer "Yes," in what amount?    $_____

## COUNT XI – CIVIL CONSPIRACY
## (AGAINST SMART SOURCE AND HORN)

**1.** Has InnerWorkings proven with evidence that Smart Source and Ms. Horn formed a conspiracy?

   i.   Yes:_____          No:_____

**2.** Has InnerWorkings proven that Horn was employed by Smart Source during the alleged conspiracy?

   i.   Yes:_____          No:_____

**3.** Has InnerWorkings proven with evidence that Smart Source and Ms. Horn engaged in wrongful conduct in furtherance of the conspiracy, i.e., an actionable claim based upon deceit?

   i.   Yes:_____          No:_____

**4.** Has InnerWorkings proven with its evidence that it suffered actual damages resulting from Smart Source and Ms. Horn's conduct?

   i.   Yes:_____          No:_____

## DAMAGES

1. Has InnerWorkings proven its evidence that its business was "completely destroyed" by Smart Source's and Ms. Horn's participation in a civil conspiracy?

   i.   Yes:_____          No:_____

2. Has InnerWorkings proven with evidence the market value of its Hawaii-based business as of February 14, 2020? If "Yes," state the dollar amount of the market value damages proven from the evidence that you award.

   i.   Yes:_____          No:_____

ii. If you answer "Yes," in what amount?$_____

DEFENSES

SOURCES

1. Florida
   a. "In Florida, '[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" *GE Real Est. Servs., Inc. v. Mandich Real Est. Advisors, Inc.*, 337 So. 3d 416, 420 (Fla. 3d DCA 2021) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).

2. Hawaii
   b. "'A civil conspiracy claim ... has three elements: (1) the formation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy, i.e., an actionable claim based upon deceit; and (3) damage.'" *Bralich v. Sullivan*, 2018 WL 1938297, at *10 (D. Haw. Apr. 23, 2018) (quoting *Menashe v. Bank of New York*, 850 F. Supp. 2d 1120, 1138 (D. Haw. 2012)).

SO SAY WE ALL.

_____
Foreperson

_____
(Date)

Respectfully submitted,


/s/_____
Jennifer W. Corinis
Florida Bar No. 49095
GREENBERG TRAURIG, P.A.
101 E. Kenney Blvd., Suite 1900
Tampa, FL  33602
(813) 318-5704 - Phone
(813) 318-5923 - Fax
Email: corinisj@gtlaw.com

And

Laura Luisi
(*Admitted Pro Hac Vice*)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL  60601
(312) 546-5201
Email: luisil@gtlaw.com

And

Daniel Hildebrand, Esquire
(*Admitted Pro Hac Vice*)
LEWITAS HYMAN PC
161 North Clark Street, Suite 1600
Chicago, IL  60601
(312) 479-0428
Email:
dhildebrand@securitieslaw.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _____, 2023, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will

send a notice of electronic filing to counsel of record:

_____
Attorney